**Lucy JOHNSON, Appellant,**

v.

**William BROCK, in his official capacity as Acting Secretary of the Department of Labor.**

No. 85–5949.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 2, 1986.
Decided Jan. 20, 1987.

Stephen C. Leckar, Chicago, Ill., with whom Robert A.W. Boraks, Washington, D.C., was on brief for appellant.

Patricia D. Carter, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief for appellee.

Before SILBERMAN and WILLIAMS, Circuit Judges, and JAMESON,* Senior District Judge.

Opinion for the Court filed by Senior District Judge JAMESON.

JAMESON, Senior District Judge:

Plaintiff-appellant, Lucy Johnson, is a black female employee of the Employment and Training Administration (ETA), an

---

* Of the United States District Court for the District of Montana, sitting by designation pursuant to 28 U.S.C. § 294(d) (1982 & Supp.1985).

agency of the Department of Labor (DOL). She was a GS–12 contract specialist in December 1981, when the agency experienced a reduction in work force (RIF), and Johnson was downgraded to a GS–4 clerk. She was repromoted to a GS–9 contract specialist in 1983. In this Title VII action the district court found Johnson to have been the victim of a continuing pattern of race discrimination and ordered that she be repromoted to a GS–12 position, with appropriate back pay. The court held, however, that Johnson did not have repromotive rights to a GS–13 level position. Johnson appeals that portion of the court's opinion which refused (1) to order her promotion to a GS–13 position, and (2) to enjoin defendant-appellee from further acts of discrimination. We affirm.

## I. BACKGROUND

Lucy Johnson began her government service in 1965 as a GS–3 clerk-typist with the Federal Housing Administration. She subsequently moved to a position as a GS–5 secretary in the Office of Economic Opportunity, which was assimilated by the DOL in 1967. In 1980, Johnson obtained a permanent position as a GS–12 contract specialist in ETA's Office of Contracting. The record indicates that on several occasions Johnson received special recognition as an outstanding employee and that her supervisors felt that her performance was well above average. In September 1981, she applied for, and qualified for, a "GS–13 vacancy for a contract specialist, but on October 5, 1981, the position announcement was cancelled."

In December 1981, ETA experienced a RIF which resulted in the elimination of Johnson's position. Johnson was reduced in grade to a GS–4 clerk-typist. Despite the reduction, however, Johnson continued to receive the salary of a GS–12. Johnson was also notified that she was eligible for "special consideration for repromotion" to her former grade level. Apparently this special consideration meant that if a position at her former grade level became available within two years she would be repromoted unless there were "very good reasons for not doing so."[1] The district court found that Johnson "doggedly applied for vacancies as they occurred." In August 1983, Johnson was repromoted to a GS–9 contract-specialist.[2] She was never repromoted to her pre-RIF grade level.

After the December 1981 RIF, ETA experienced substantial administrative and personnel reorganizations and reductions. Between 1981 and 1985 the total work force was cut by more than one half, from 3,486 to 1,696. The Office of Contracting merged with the Office of Policy, Evaluation and Research. The resulting product was then moved from the Programs Office to the Office of Administration. The merged office continued to work on contracts and received new responsibility for grants. The reorganization resulted in the reinstatement of the contract-specialist positions that were abolished in December 1981, and the creation of additional contract-specialist positions.

Lucy Johnson did not receive an invitation to fill any of the reinstated or newly created contract-specialist positions. Instead, Thomas C. Komarek, ETA's Administrator of Financial Controls and Management Systems, decided to fill the positions by lateral reassignment rather than by repromotion or competitive staffing. Komarek filled the reinstated and newly created positions with employees from within the

---

**1.** Although the notification limited the special consideration period to two years, the record indicates that ETA had the discretion to repromote Johnson after the two year period.

**2.** Johnson continued to receive "essentially the same salary as that of her pre-RIF GS–12 position."

ETA whose positions were either threatened by RIFs or were abolished. The new contract-specialists entered the Office of Contracting at or above the GS–11 level.[3] None of the new contract-specialists had previously been a contract-specialist. All of them were white. At the time the positions were filled, DOL procedure provided for consideration of repromotion rights only when positions were filled by competition. Consequently, Johnson was not considered for the reinstated and newly created contract-specialist positions.

Subsequently, in the summer of 1982, Janet Sten, Acting Director of the Office of Contracting, filled four contract-specialist positions at the GS–11 level by repromotion. All of the repromoted individuals were black and had held positions at the GS–11 level. In October 1983, Edward Tomchick, Sten's successor, repromoted an additional black female to a GS–12 contract position. The district court found that Sten and Tomchick consciously decided not to repromote Johnson on the basis of vague comments by a former supervisor that Johnson was a "slow learner." The district court also found that the personnel shifts at ETA had a significant impact on the racial composition of grades 12 through 14. The end result was a work force that was almost entirely white in the GS–12 through GS–14 positions.[4]

In June 1984, Johnson filed her complaint in the district court, alleging that the Department of Labor had "engaged in a pattern or practice of race discrimination in making personnel assignments into the Office of Contracting" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The district court held that the evidence did not support a finding of specific discriminatory intent. The court did hold, however, that Johnson had established a prima facie case of discrimination and that the Department of Labor's asserted justifications for its failure to repromote Johnson were mere pretext. Consequently, the court ordered the Department of Labor to promote Johnson to a GS–12 level position retroactive to December 31, 1983.[5] The court refused to order her promotion to a GS–13 level position on the basis of its finding that Johnson "had repromotion rights only to [a] GS–12 level position, not to a GS–13 level position, and therefore [she had] failed to establish that it is more likely than not likely that but for the combination of discriminatory circumstances ...," she would have been promoted to GS–13. On a motion for reconsideration, Johnson challenged the court's refusal to promote her to a GS–13 level position and asked the court to enjoin the Department of Labor from further acts of discrimination. The court denied Johnson's motion.

---

**3.** The district court's opinion indicates that at least nine positions were filled in this manner. One of the new contract-specialists entered her position as a GS–11, one as a GS–12, six as GS–13s, and one as a GS–15.

**4.** The district court illustrated the shifts in the racial composition of the work force with the following table:

| | Grade | White | | Black |
|---|---|---|---|---|
| December 1981 | GS–14 | 1 | (temp.) | 1 |
| | GS–13 | 4 | | 0 |
| | GS–12 | 0 | | 4 |
| June 21, 1983 | GS–14 | 1 | | 1 |
| | GS–13 | 8 | | 0 |
| | GS–12 | 3 | | 1 |

| | Grade | White | Black |
|---|---|---|---|
| September 15, 1983 | GS–15 | 1 | 0 |
| | GS–14 | 1 | 1 |
| | GS–13 | 11 | 0 |
| | GS–12 | 4 | 1 |
| December 31, 1983 | GS–15 | 1 | 0 |
| | GS–14 | 1 | 1 |
| | GS–13 | 11 | 0 |
| | GS–12 | 4 | 2 |

**5.** The district court chose December 31, 1983, based on its finding that Johnson should have at least been promoted by the end of her period of special consideration for repromotion.

## II. CONTENTIONS ON APPEAL

Johnson appeals the district court's refusal to order her promotion to a GS–13 level position and its refusal to enjoin the DOL from further acts of discrimination. She argues that, absent the discriminatory actions, she would have been eligible for promotion to a GS–13 level position and that in all likelihood she would have received a promotion. She also claims that because the circumstances at ETA remained unchanged so that nothing would prevent the Department from committing further acts of discrimination, the district court abused its discretion in refusing to issue an injunction.

## III. PROMOTION TO GS–13

The essence of Johnson's claim of entitlement to a GS–13 level position is that the district court failed to fully employ the "make whole" remedial directives of Title VII. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Johnson claims that but for the established discrimination she would have been promoted to a GS–13 level position. Relying on *Day v. Mathews,* 530 F.2d 1083 (D.C.Cir.1976), and *Bundy v. Jackson,* 641 F.2d 934 (D.C.Cir.1981), she argues that it was incumbent upon the Government to prove by clear and convincing evidence that she would not have attained a GS–13 level position. Johnson's reliance on these two cases is misplaced.

At the outset, we note that this court has recognized that in Title VII cases "the questions of statutory violation and appropriate statutory remedy are conceptually distinct." *Smith v. Secretary of the Navy,* 659 F.2d 1113, 1120 (D.C.Cir.1981). To determine whether an employer's conduct constitutes a statutory violation, the court must employ the following allocation of burdens and order of proof:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (citations omitted). In order to make out a prima facie case of discrimination for failure to promote,

the plaintiff must show [1] that she belongs to a protected group, [2] that she was qualified for and applied for a promotion, [3] that she was considered for and denied the promotion, and [4] that other employees who were not members of the protected group were indeed promoted at the time plaintiff's request for a promotion was denied.

*Bundy,* 641 F.2d at 951 (citation omitted). Here, Johnson established a prima facie case and proved that her employer's articulated non-discriminatory reasons for failing to repromote her to a GS–12 level position were pretext. Thus, she established a statutory violation with respect to the agency's failure to repromote her to a GS–12 level position.

When a statutory violation is established, the case proceeds to the remedy phase. At this phase the goal is to make the plaintiff whole by placing him, "as near as may be, in the situation he would have

occupied if the wrong had not been committed." *Albemarle Paper Co. v. Moody,* 422 U.S. at 418–19, 95 S.Ct. at 2372 (quoting *Wicker v. Hoppock,* 6 Wall. 94, 99, 18 L.Ed. 752 (1867)). To accomplish this goal, section 706(g) of Title VII, 42 U.S.C. § 2000e–5(g), gives the district courts the power to "order such affirmative action as may be appropriate." In reviewing a district court's determination of an appropriate remedy for discriminatory conduct, we look to "whether the District Court was 'clearly erroneous' in its factual findings and whether it 'abused' its traditional discretion to locate 'a just result' in light of the circumstances peculiar to the case." *Albemarle Paper Co. v. Moody,* 422 U.S. at 424, 95 S.Ct. at 2375 (quoting *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931)).

In *Day v. Mathews,* the defendant acknowledged discrimination had hindered the plaintiff's application for a particular job. This court held that because the plaintiff had established a statutory violation with respect to that particular position, the case proceeded to the remedy stage and the burden shifted to the employer to prove by clear and convincing evidence that the plaintiff, even absent the discrimination, would not have been promoted to that particular position. *Day,* 530 F.2d at 1085.

In *Bundy v. Jackson,* we applied the *Day* holding to a case involving two distinct claims for relief from sexual harassment. There, because the plaintiff had already proved illegal discrimination on her first claim (for an injunction barring management from making unsolicited sexual advances on the job), on her second claim for back pay and promotion we:

> adjust[ed] the *McDonnell* formula to Bundy's claim as follows: To establish a prima facie case of illegal denial of promotion in retaliation against the plaintiff's refusal of sexual advances by her

supervisors, the plaintiff must show (1) that she was a victim of a pattern or practice of sexual harassment attributable to her employer (Bundy has, of course, already shown this); and (2) that she applied for and was denied a promotion for which she was technically eligible and of which she had a reasonable expection.

*Bundy,* 641 F.2d at 952–53. Applying *Day,* we held that because the plaintiff established the above-described abbreviated prima facie case of discrimination with respect to her employer's failure to promote her, the case proceeded directly to the remedy stage and the burden shifted to her employer to prove "by clear and convincing evidence, that he had legitimate nondiscriminatory reasons for denying ... the promotion." *Id.* at 953. As in *Day,* the plaintiff in *Bundy* made no claims of entitlement to a promotion beyond the position she alleged, in her prima facie case, had been denied her.[6]

Johnson's reliance on *Day* and *Bundy* tends to blur the distinction between the statutory violation phase and the remedy phase of her case. This court's decisions indicate that the clear and convincing proof requirement of *Day* comes into play only after the plaintiff has established a statutory violation. *See, e.g., Toney v. Block,* 705 F.2d 1364, 1370 (D.C.Cir.1983) (Tamm, J., concurring); *Milton v. Weinberger,* 696 F.2d 94, 98 (D.C.Cir.1982); *McKenzie v. Sawyer,* 684 F.2d 62, 77 (D.C.Cir.1982). Thus, in a case such as *Day,* the plaintiff would already have proven by a preponderance of the evidence the existence of discrimination with respect to the particular position for which he sought retroactive relief. The additional gloss placed upon this standard by *Bundy* comes into play only when a plaintiff establishes a perva-

---

**6.** Bundy sought back pay and promotion with respect to two positions. She alleged that her employer's discrimination delayed her eventual promotion to a GS–9 level position and denied her a subsequent promotion to a GS–11 level position. Thus, she sought back pay for the delayed promotion and back pay and a promotion to the position she had been denied. *Bundy,* 641 F.2d at 948.

sive discrimination in the work place that causes injury apart from a failure to promote.

As the district court noted, Johnson "had repromotion rights only to [a] GS–12 level position, not to a GS–13 level position." As such, the claim for failure to *promote* to a GS–13 position is distinct from the claim for failure to *repromote* to a GS–12 position. Plaintiff's proof that defendant violated Title VII in failing to repromote her to a GS–12 position does not automatically shift to defendant the burden to prove by clear and convincing evidence that the plaintiff would not have been promoted to a GS–13 position as well. The plaintiff must establish, via the process set out in *Burdine, see supra* p. 223, a basis for shifting that burden to the defendant. The plaintiff must establish that her failure to achieve a GS–13 position resulted from defendant's statutory violation.

Although Johnson has put on some evidence reflecting that her failure to achieve a GS–13 position *may* have resulted from discrimination,[7] she did not establish a statutory violation with respect to GS–13. Only two GS–13 level positions were filled by competitive staffing during the period that Johnson established there was discrimination with respect to GS–12 positions. The first GS–13 level position was outside of the ETA and was obtained by Patricia Challenger. But Johnson did not apply for that job, and therefore did not make out the required prima facie case. The second position, which was in ETA, went to Jeanette Cohen, who held a GS–13 contract-specialist position prior to the RIF. The evidence is unclear on whether Johnson applied for this position, but in any event, she failed to prove by a preponderance of the evidence that the Government's justification—that Cohen got the job because of better qualifications—was mere pretext.

Our review of the record thus does not leave us "with the definite and firm conviction that a mistake has been committed" by the district court. *See United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

## IV. FAILURE TO ENJOIN FURTHER ACTS OF DISCRIMINATION

Johnson also claims that the district court erred in refusing to enjoin the DOL from further acts of discrimination. She argues that upon a finding of discriminatory conduct such an injunction is mandatory. As with the determination of appropriate affirmative relief, the determination of whether to enjoin an employer from further discriminatory acts is left to the discretion of the trial court. The trial court's discretion, however, must be exercised in light of the purposes of Title VII. *Albemarle Paper Co. v. Moody,* 422 U.S. at 417, 95 S.Ct. at 2371. Thus, the district court has a "duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Id.* at 418, 95 S.Ct. at 2372 (quoting *Louisiana v. United States,* 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709 (1965)). Although enjoining a defendant from further acts of discrimination is a typical remedy in Title VII cases, this court has never held that it is a mandatory remedy; nor have we held that the burden is on the defendant to disprove the need for such an injunction by clear and convincing evidence.

Johnson places great reliance on our decision in *Bundy.* She argues that absent a reasonable expectation that the discriminatory conduct will not recur the district court must enjoin the DOL from further acts of discrimination. *See Bundy,* 641 F.2d at 946 n. 13. In *Bundy,* however, we did not hold that an injunction is mandatory in all cases. We merely held that under the particular facts of that case there was reason to believe that the discriminatory

---

7. Johnson submitted evidence that (1) over the course of her sixteen years in government service she was promoted a grade level approximately every 2.3 years; (2) Patricia Challenger, a white, was promoted from a GS–9 intern in 1980 to GS–13 contract-specialist in January 1984; and (3) ETA had a "dire need for experienced workers" at ETA during the period of discrimination.

conduct could recur. *Id.* Consequently, we suggested that the district court issue an injunction which, *inter alia,* enjoined the defendant from further acts of discrimination. *Id.* at 948 n. 15.

██ As Johnson has pointed out, the facts in *Bundy* are similar to the facts in this case. As in *Bundy,* the same persons who committed the discriminatory acts remain in supervisory positions at DOL and ETA and are capable of further discriminatory acts. This fact alone, however, is not sufficient for us to conclude that the district court's refusal to issue an injunction constitutes an abuse of discretion. Unlike the discriminatory acts committed in *Bundy,* the acts complained of here were not directed at Johnson. The district court expressly found that there was no specific intent to discriminate against Johnson. Where no such intent was present it is not reasonable to conclude that discriminatory acts will continue in the future. The result of this action has no doubt impressed upon the agency its need to exercise greater care in determining its employment policies. Its past practices do not suggest the callous disregard for the goals of Title VII which necessitate injunctive relief. The district court has a "keener appreciation of [the] facts and circumstances peculiar to [this] particular [case]." *Albemarle Paper Co. v. Moody,* 422 U.S. at 421–22, 95 S.Ct. at 2373. Based upon our review of the record, we cannot say the district court's refusal to enjoin DOL from further acts of discrimination amounted to an abuse of discretion.

## V. Conclusion

Appellant failed to establish illegal discrimination with respect to GS–13. Therefore, the district court correctly denied appellant that relief. The district court did not abuse its discretion in refusing to enjoin the Department of Labor from further acts of discrimination. The judgment of the district court is

*Affirmed.*