**Rita MACHAKOS, Appellant,**

v.

**ATTORNEY GENERAL OF the UNITED STATES.**

No. 87–5069.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 4, 1988.

Decided Oct. 25, 1988.

Amy E. Wind, with whom Irving Kator and Joseph B. Scott were on the brief for appellant. Jennifer R. Levin, Washington, D.C., also entered an appearance for appellant.

R. Craig Lawrence, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and Richard N. Reback, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee. Stuart H. Newberger, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before RUTH BADER GINSBURG and SILBERMAN, Circuit Judges, and POLLACK,* Senior District Judge.

RUTH BADER GINSBURG, Circuit Judge:

Plaintiff-appellant Rita Machakos, a white female born in 1924, was denied promotions she sought in clerical/paralegal posts in the Civil Rights Division (CRD) of the Department of Justice during 1977–1984. In each instance, the individual selected for the post was a black female

---

* Of the United States District Court for the Southern District of New York, sitting by designation

pursuant to 28 U.S.C. § 294(d).

under forty. Machakos sued the Attorney General and the Department, alleging race discrimination and retaliation prohibited by Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., age discrimination prohibited by the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a, sex discrimination in compensation prohibited by the Equal Pay Act, 29 U.S.C. § 206(d)(1), and violations of the Privacy Act, 5 U.S.C. § 552a. The district court entered judgment for plaintiff on her Title VII claims and for defendants on the ADEA claim; it granted plaintiff's request to nonsuit her Equal Pay Act claim and dismissed the Privacy Act claim as unproved. As principal Title VII relief, the court ordered promotion and backpay retroactive to February 1984. *Machakos v. Meese*, 647 F.Supp. 1253 (D.D.C.1986).

In this appeal, Machakos asserts entitlement to Title VII relief retroactive to 1977 [1] and seeks reversal of the judgments for defendants on her ADEA and Privacy Act claims. Our review of the record does not leave us "with the definite and firm conviction that a mistake has been committed" by the district court, and we therefore affirm that court's judgment. *See Johnson v. Brock*, 810 F.2d 219, 225 (D.C.Cir.1987) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

## I.

Machakos alleged, and the district court found, that the CRD pursued an unlawful minority preference policy during the period 1977–1984. However, as we comprehend the district court's decision, that court determined the Diane Roberts promotion in February 1984, 647 F.Supp. at 1259, 1266, to be the time when the cumulative evidence warranted a determination that defendants' race preference practices impacted adversely on plaintiff. *See id.* at 1261

(emphasizing that finding of reverse discrimination was based on cumulative impact rather than on any particular pre–1984 employment decision); *cf. Johnson v. Brock*, 810 F.2d at 221–22 & n. 5 (black female plaintiff, in course of two-year special repromotion consideration period, "doggedly applied for vacancies as they occurred"; district court ordered promotion retroactive to last day of period finding that plaintiff "should have at least been promoted by the end of her period of special consideration for repromotion"); *Toney v. Block*, 705 F.2d 1364, 1366 (D.C.Cir.1983) (principle enunciated in *Day v. Mathews*, 530 F.2d 1083 (D.C.Cir.1976), imposing extraordinary proof burden on employer, is properly confined to cases in which plaintiff has established not merely "institutional or systemic discrimination" or discrimination "with regard to [manner of supervision or] work assignments," but, specifically, discrimination "with regard to the evaluation of [plaintiff's] qualifications ... *in the particular employment decision for which retroactive relief was sought* ") (emphasis in original). We find no clear error in the district court's refusal to rule that an earlier denial of promotion to Machakos was an identifiable product of the CRD's discriminatory policy.

Machakos stresses the CRD's practice of detailing minority workers into jobs so that they would gain experience. The district court referred to four instances of that character. In April 1983, Quilla James obtained a GS–9 with a promotion potential to a GS–11, 647 F.Supp. at 1258; Appendix (App.) at 153. In February 1984, Diane Roberts obtained a GS–11, 647 F.Supp. at 1259; App. at 166. And in March 1984, Ann Johnson and Sarah Smith each obtained a GS–9, 647 F.Supp. at 1259; App. at 155. Of these four personnel decisions, only one occurred prior to the February 24, 1984 Roberts promotion—the promotion

---

1. Last year, this court remanded the record "for an explanation why the district court limited the time period of the backpay award to 1984." *Machakos v. Meese*, No. 87–5069 (D.C.Cir. Nov. 3, 1987). The district court promptly returned a memorandum of explanation. *Machakos v. Meese*, No. 83–2610 (D.D.C. Nov. 12, 1987)

[available on WESTLAW, 1987 WL 25650]. The memorandum stated, *inter alia:*

> In several instances, Ms. Machakos "was not the best qualified candidate" or she was not considered for a position "due to her tardiness in applying."

*Id.* at 2–3 (quoting 647 F.Supp. at 1263).

that was the reference point for the retroactive relief accorded Machakos. That single instance was the GS–9 post filled by Quilla James on April 6, 1983. But Machakos had held a GS–9 since July 1981, 647 F.Supp. at 1265, thus this evidence is insufficient to mark as "clear error" the court's selection of the February 1984 date for promotion of Machakos to the GS–11 rank.[2]

In November 1977, Flora Brown was brought in from outside the Justice Department as a lateral hire for a GS–7/9 paralegal post, although the vacancy announcement had specified as the Area of Consideration only "Offices, Boards, and Divisions" of the Justice Department. App. at 94, 100. Machakos claims her own qualifications were superior to Brown's. She does not substantiate this comparative judgment, however; the district court did not find the incident significant enough to mention in its opinion; and we do not consider it "clear error" to fail to treat this episode as probative of discrimination.

Machakos presses most vigorously the claim that a reference point more appropriate than the February 1984 Diane Roberts promotion is the August 1977 date on which Brenda Sheppard received a lateral appointment to a GS–11 post. See 647 F.Supp. at 1257. But the district court noted that seven applicants for that job ranked higher than Machakos. Id. Nor did Machakos rate among the best qualified candidates for the GS–7/9 to which she applied simultaneously. Again no "clear error" reveals itself in these episodes.[3]

Machakos also urges that all her applications were timely, although the government maintains that some were not; she calls our attention to the district court's observation that, regarding vacancy deadlines and application requirements, the De-

partment was "willing to be more accommodating ... to black applicants." 647 F.Supp. at 1259.[4] But the allegedly telling evidence she relies on here relates to the Roberts promotion on February 24, 1984, which the court made the reference point for Machakos' retroactive relief, and the promotion of Donna Enos to a GS–11 on a later day, March 12, 1984. See App. 159–63.

Finally, Machakos argues that her case fits the pattern defined in Bundy v. Jackson, 641 F.2d 934, 952–53 (D.C.Cir.1981), and restated in Johnson v. Brock, 810 F.2d at 224–25: discrimination pervaded her workplace, she maintains; it caused her injury "apart from a failure to promote"; so she is entitled to fully retroactive relief "merely by showing (1) she was a victim of a pattern of discrimination, and (2) she applied for and was denied a promotion for which she was technically eligible and of which she had a reasonable expectation." Brief for Appellant at 31–32.

Machakos' case is not like Bundy's. The plaintiff in Bundy had proved she was a victim of sexual harassment in violation of Title VII, and had therefore won declaratory and injunctive relief on that account alone. Because she had established unlawful discrimination against her and entitlement to relief "as a matter wholly independent of her claim for back pay and promotion," this court held that she "enter[ed] the ritual order of proof at an advantage over the typical Title VII plaintiff who claims categorical ... discrimination which can only be proved as an incident of the discriminatory denial of promotion or other tangible benefit." Bundy, 641 F.2d at 952.

Here, there is no "wholly independent" race discrimination claim entitling Macha-

---

2. In view of Machakos' own grade level, we also find no clear error in the district court's refusal to augment the GS–11 retroactivity period based on these selections: Jane Robinson for a GS–5/7/9 post in November 1978; Vonnie Ryan for a GS–7 in July 1980; Jane Dyer for a GS–5/7/9 in September 1982. See 647 F.Supp. at 1258, 1265; Appendix (App.) at 122.

3. We note the government's observation that it was not the Civil Rights Division—the unit found by the district court to have in place a

race preference policy—but the central personnel office that screened out Machakos for the post Sheppard filled. Brief for Appellees at 22 n. 11.

4. The government notes that, in making this comment, the district court pointed to nothing in the record indicating the race of the applicants whose tardy applications were considered. Brief for Appellees at 14 n. 9.

kos to relief. There is only the claim of categorical discrimination built upon alleged "incident[s] of discriminatory denial of promotion." Nothing in this record, in short, support Machakos' argument that she should reap "an advantage over the typical Title VII plaintiff."

In sum, we find in the district court's Title VII-retroactive relief adjudication neither clear error, *see Pullman–Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), nor an abuse of that court's "traditional discretion to locate 'a just result' in light of the circumstances peculiar to the case." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 424, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975) (quoting *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931)); *Johnson v. Brock,* 810 F.2d at 224.

## II.

Machakos' ADEA and Privacy Act claims are not close calls. The evidence that persuaded the district court to find race discrimination, *i.e.,* the testimony of Department officials concerning "an informal policy of promoting blacks within the Civil Rights Division," 647 F.Supp. at 1260, provides not a shred of support for an age discrimination inference. *See* Supplemental Appendix (S.App.) at 115 (departmental EEO counselor Dulmage affirms that it was a reverse discrimination problem, not a sex or age case). Far from finding any clear error in the district court's disposition of this claim, our review of the record satisfies us that there was indeed "no evidence that age was 'a determining factor' in the decisions to deny Ms. Machakos various promotions." 647 F.Supp. at 1264.

From complaint through trial the Privacy Act claim remained in dim light. When defendants moved to dismiss that claim, counsel for plaintiff made a fleeting reference to Machakos' request for "certain staffing pattern information." S.App. at 190. Counsel then undertook to "argue [the matter] in our closing arguments." *Id.* But apparently there was no closing argument, nor did counsel address the Privacy Act claim in the plaintiff's post-trial brief. Given the muted zeal and minimum clarity that attended presentation of the claim, the district court was justified in assuming that Machakos had ultimately decided not to press this aspect of her complaint. Furthermore, to the extent documents were sought for their relevance to this case, we are left without information why Machakos could not have achieved her objective through pre-trial discovery. We are therefore satisfied that the district court properly ruled the matter out for failure to state and prove a claim susceptible of cogent adjudication.

CONCLUSION

For the reasons stated, the judgment of the district court is

AFFIRMED.