Lucretia ROBINSON, Plaintiff,

v.

John DALTON, Secretary, Department of the Navy, Defendant.

Civ. A. No. 96–35 (CRR).

United States District Court, District of Columbia.

March 25, 1996.

---

Lisa Robinson, Washington, DC, pro hac vice.

Darryl Valdez, Assistant United States Attorney, for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court is an employment discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e. The plaintiff alleges that she was denied a promotion by the Department of the Navy's Navy Regional Data Automation Center ("NARDAC") because of her race and/or sex.[1] The defendant, the Secretary of the Navy, sued in his official capacity, denies this allegation and asserts rather that the persons selected for the position at issue were better qualified for the position than the plaintiff.

A bench trial was held before the Court on March 6–7, 1996. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court herein sets forth its findings of fact and conclusions of law, and shall enter a final judgment for the defendant based thereon.

---

1. The plaintiff also alleged retaliation for engaging in previous EEO activity. By Order dated March 1, 1996, this Court granted the defendant's Motion for Summary Judgment with respect to the plaintiff's retaliation claim on the ground that the plaintiff failed to establish a *prima facie* case of retaliation. Thus, the only issue before this Court is her claim of race and/or sex discrimination.

## FINDINGS OF FACT

The plaintiff is a black female, who was employed as a GS–334–13 Computer Programmer assigned to NARDAC, located at the Navy Yard in the District of Columbia. The plaintiff began employment with the defendant as a mathematician in 1962, after graduating with a Bachelors of Science Degree in Mathematics in 1960. She worked for the federal government until she retired on December 3, 1995 under the Voluntary Separation Incentive Program.

At the time of the selection for the position at issue, Mr. Edward St. Claire Buckler, III, was the Director of the facility where the plaintiff was employed. Buckler testified that, just prior to the vacancy announcement, it had been determined that the newly created Naval Computer and Telecommunications Station should focus its efforts on the development, implementation, and maintenance of advanced telecommunications/network systems through which the Navy's computers can communicate and exchange information with computers, operating systems, system software, and applications around the world, in order to keep pace with the technological advancements of computers and their use in the field of telecommunications, and in order to upgrade the use of computers to efficiently and safely transfer information over wide areas around the world. Def. Exh. 28. Consistent with this new focus, Buckler authorized Mr. Harry B. Towne, a Division Head and plaintiff's first line supervisor, to recruit and advertise for a GM–334–14 Supervisory Computer Programmer position. Def. Exh. 3.

Towne testified that he established the factors to be used for consideration of applicants for the position with the support of the Human Resources Office ("HRO"). Def. Exh. 30. Towne then submitted to HRO a Standard Form 52, Request to Recruit, and a Crediting Plan setting forth the duties, responsibilities, and qualification requirements of the position, pursuant to Merit Promotion Procedures. Def. Exh. 3, 4, and 13.

On January 9, 1991, NARDAC issued Merit Staffing Vacancy Announcement Number 110–13 for the position of Supervisory Computer System Programmer, GM–334–14, with a closing date of January 30, 1991. Def. Exh. 6. Along with their SF–171s and most recent annual performance appraisals, applicants were required to submit a narrative statement addressing the following evaluation factors:

1. Ability to communicate effectively both orally and in writing.

2. Ability to supervise and coordinate ADP [automated data processing] technical personnel efforts to acquire, develop, implement and maintain telecommunications/network systems.

3. Knowledge and experience in the analysis, design, development, and implementation of data communications systems.

4. Knowledge of modern techniques and procedures to design telecommunications architectures, implement telecommunications/network systems interfacing with operating systems and system software.

5. Ability to administer and support the equal employment opportunity (EEO) objectives of the federal government.

*Id.* Additionally, the position description listed supervisory and administrative duties consistent with those in the Vacancy Announcement, and stated that the incumbent would function as an authority, advisor, and consultant, providing technical assistance and expertise on system and telecommunications software to a number of Naval offices. *Id.*

Eighteen individuals applied for the position at issue. Def. Exh. 17. The applicants consisted of nine white males, three white females, two black males, two black females, one Asian female, and one male of unspecified race. *Id.* Among the applicants were the Mr. Charles Powell and Mr. Matthew D'Antuono, the two selectees, and Ms. Lucretia Robinson, the plaintiff.

Powell was a GS–13 Computer Specialist in the Naval Computer and Telecommunications Command agency (NCTC) of defendant, and had over 13 months experience at that grade. In this capacity, he served as program manager for open systems for NCTC, a world-wide command with responsi-

bility for telecommunications and data processing support for the defendant on shore. Powell was also responsible for coordinating and planning the NCTC Open Systems Education and Implementation project and had budgetary preparation responsibilities. He had been employed by the defendant since January 1990. From January 1990 to October 1990, Powell was program manager for the Navy Standard Teleprinter Ashore, a $5 million microcomputer project to automate message preparation and delivery at defendant's telecommunications centers worldwide. As stated in his SF–171 application, in this capacity, he was detailed as Acting Branch Chief, a GM–14 position in which he supervised five employees. Prior to his employment with defendant, Powell was employed in several positions with the U.S. Army, including Director of Information Management, in which he supervised 70 employees and administered the information systems program for the Army Intelligence and Security Command. Powell received six performance awards during his employment with the Army. For the rating period immediately prior to his selection, he received a level 4 performance rating, "exceeds fully successful," out of five possible ratings. Def. Exh. 10.

D'Antuono began employment with defendant in July 1970 as a GS–5 Computer Programmer; from 1974–1980 as a Computer Specialist; and had been a GS–334–13 Computer Systems Programmer since January 1981. From January 1988 to the time of his selection, he, like the plaintiff, was employed in the Telecommunications Support Department as a team leader, coordinating the work of three employees and administering various computer systems for defendant's telecommunications systems. His immediate supervisor was also Towne, and his second-level supervisor was Buckler. From July 1983 to January 1988, D'Antuono served as a team leader in the Data Automation Center, where he maintained and administered optimization software and engaged in a variety of long-range planning support activities. From January to July 1983, D'Antuono assumed responsibility for leadership of the Utilization Analysis Division after retirement of the division head and he supervised nine computer

specialists. Prior to this time he was employed in various computer programming positions with defendant. From 1978 through March 1990, D'Antuono received 11 performance awards. He earned a Bachelor of Science degree in Business Administration in 1968 and, like plaintiff, has taken approximately 40 training courses during his employment with defendant. For the period immediately prior to his selection, D'Antuono received a level 4 performance rating, "exceeds fully successful," out of five possible ratings. Def. Exh. 9.

The plaintiff began employment with the defendant as a mathematician in 1962. From 1972 to 1990, she was employed in the Data Processing Department, where she was responsible for administering office reporting and automation systems. In February, 1990, the plaintiff was employed as a Computer Systems Programmer, GS–334–13, in the Telecommunications Support Division, NARDAC, where she served as a team leader, coordinating the work of three employees; administered support for defendant's electronic mail facility; and participated in Command Area Local Area Network. For the evaluation period immediately prior to the selection for the position at issue, the plaintiff's performance was rated at level 3, "fully successful," out of a possible five level. Def. Exh. 7. The plaintiff testified that she has never challenged her "fully successful" performance rating.

After the applications were received, Buckler appointed an evaluation panel to review and rank applicants for the position. Def. Exh. 11. The panel was chaired by Towne, and included Mr. Paul McKenna, Supervisory Computer Programmer Analyst, GM–15, and Mr. Robert Cooney, Supervisory Computer Programmer Analyst, GM–14. *Id.* All members of the panel were white males.

The panel members, Towne, McKenna, and Cooney, each testified that they first became aware that the plaintiff had applied for the vacancy when they reviewed her application package as members of the rating panel. Def. Exh. 29–31. Towne and Cooney knew the plaintiff prior to that time, but McKenney did not. *Id.* Each panel member

further testified that, while they served on the rating panel, they did not communicate with any of the applicants regarding any matter related to the application, they conducted independent ratings of each application, and they did not discuss any of the applications with each other until the applications had been completed and delivered to the Human Resource Office. *Id.* McKenna testified that it is his normal operating procedure to remove the first page of the application, which contains such information as name and sex, from the package in order to remove from his consideration these criteria. Def. Exh. 29, ¶ 6. Each panel member testified that they observed that the plaintiff lacked open systems technology background and had not been in charge of any major projects, while each was impressed that both Powell and D'Antuono had training and experience in open systems technology and communications design, skills each member believed were needed for the vacancy position. Def. Exh. 29–31.

The panel was responsible for independently ranking the applicants for the position in accordance with a crediting plan that applied the five evaluation factors listed above to the particular qualifications of each applicant as reflected in their SF–171s and narrative statements. Def. Exh. 13. In ranking the applicants, the panel members testified that they did not consider their personal knowledge of any of the applicants. Def. Exh. 29–31. Each testified that he did not act with any discriminatory animus or intent. *Id.*

The highest scoring candidates, Powell and D'Antuono, received an average score of 17 on the five factors, while the lowest scoring candidates received an average of 11. Def. Exh. 17. The plaintiff's average rating was 11.6. *Id.*

After the evaluation panel rated the applicants, the applications were returned to a personnel staffing specialist who narrowed down the candidates by setting the cut-off point for the "best qualified" applications at 13, and sent the list of candidates with average ratings of 13 or above to Buckler, the selecting official. Def. Exh. 19. The list sent to Buckler consisted of seven merit pro-

motion candidates with scores of 13 or above—five white males, one white female, and one Asian female. *Id.* Because plaintiff's average score was 11.6, her application was not forwarded to the selecting official for consideration. *Id.* The evaluation panel had no knowledge what the break point would be at the time they were rating the applicants. Def. Exh. 29–31.

Buckler testified that during the course of his review of the applications, he was advised by the Commanding Officer, NCTS, that reorganization plans and supporting position descriptions were being approved, and that a second related position had become available. Def. Exh. 28. As a result, Buckler made two selections from the list of candidates provided by HRO, and chose the two individuals with the highest scores, Powell and D'Antuono. *Id. See also* Def. Exh. 21.

Prior to making his selection, Buckler testified that he did not interview any of the applicants. He did not know Powell, and was unaware of Powell's race. Def. Exh. 28. Buckler testified that he did not see the plaintiff's application because it did not make the final cut-off and that he does not recall being aware that the plaintiff had applied for the position. *Id.* Buckler stated that he was impressed that both Powell and D'Antuono had education and experience in open systems technology, and had done substantive work in computer communications design and standards. *Id.* Buckler believed that these skills were the type needed for the vacancies. *Id.* In addition, Buckler further noticed that the rating panel had given both of the selectees ratings consistent with the information in their applications, especially in open systems technology. *Id.*

On April 9, 1991, the plaintiff was informed that D'Antuono was selected for the position. On April 10, 1991, plaintiff was further informed that Powell was selected for a similar position.

The plaintiff filed a formal EEO complaint on May 14, 1991. On June 23, 1994, EEOC Administrative Judge Antoinette Eates found that plaintiff failed to establish by a preponderance of the evidence that defendant's articulated reasons for her rejection for the

position was pretext for discrimination based on her race, sex, or reprisal for prior EEO activity. On September 1, 1994, the Department of the Navy issued its Final Agency Decision regarding this complaint, adopting the EEOC administrative judge's Findings and Conclusions. The plaintiff filed the present complaint on January 16, 1996.

The Court finds that the defendant selected Powell and D'Antuono, two white males, for the vacancy rather than the plaintiff, a black female, not because of discriminatory animus or motive, but because the selectees were considered more qualified and, in fact were more qualified, for the vacancy position than the plaintiff. While there is evidence that the plaintiff may have been qualified for the position, the Court finds that the two persons selected were in fact better qualified for the position than the plaintiff. The Court bases this finding on the testimony of the rating members and selecting official, which testimony the Court found to be reasonable and credible, as well as on the testimony of the plaintiff regarding her experience. Also, the Court has relied upon the undisputed qualifications of each selectee and the plaintiff as set forth in their SF–171 applications and as detailed above.

Moreover, that the defendant did not act with discriminatory animus toward the plaintiff is supported by evidence independent of the rating members' and selecting official's testimony and the SF–171s. For example, both female and male applicants for this vacancy received ratings lower than that of the plaintiff. Def. Exh. 17. McKenna, the rating official who did not know the plaintiff and who routinely removed the cover sheets from all applications, rated the plaintiff almost identically to those raters who did know the plaintiff.[2] *Id.* The plaintiff received a score below the cut-off and, thus, her application was not even among those considered by the selecting official. Additionally, the panel rated two other females, one Asian and the other white, higher than plaintiff. Def. Exh. 17. Of these two female applicants, the Asian female made the cut-off for consideration by the selecting official. Def. Exh. 19. In the final analysis, the selecting official

chose the two individuals with the highest scores. Def. Exh. 17.

As for the plaintiff, she has brought prior EEO complaints, some successful, others unsuccessful. She was also a member of the prevailing class in a civil action filed in the early 1970s that found class-wide discrimination in promotions in the Department of the Navy. The fact that the plaintiff has previously asserted complaints under the EEO laws and civil rights laws should not, and does not, discredit her. The plaintiff impressed this Court as a person who has worked diligently in her long career at the defendant agency but, simply, was unable to prove her case here as to the issues before the Court.

## CONCLUSIONS OF LAW

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Id.* at 252–53, 101 S.Ct. at 1093 (citations omitted). In order to make out a prima facie case of discrimination for failure to promote, the plaintiff must show (1) that she belongs to a protected group; (2) that she was qualified for and applied for the promotion; (3) that she was considered for and denied the promotion; and (4) that other employees who

---

**2.** McKenna rated the plaintiff a 12; Towne rated her an 11; Cooney rated her a 12.

were not members of the protected group were promoted at the time plaintiff's request for promotion was denied. *Johnson v. Brock,* 810 F.2d 219, 223 (D.C.Cir.1987).

■ The burden then shifts to the defendant to articulate legitimate, nondiscriminatory reasons for the defendant's actions. *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1095; *see also St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Once the defendant has carried this burden of production, the presumption raised by the plaintiff's prima facie case is rebutted, and the burden then shifts back to plaintiff to demonstrate, by a preponderance of the evidence, that the reason set forth by the defendant is a mere pretext. *Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1094–95. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Id.* at 253, 101 S.Ct. at 1093.

■ Here, while the plaintiff may have made out a prima facie case, the defendant has established that there was a legitimate, nondiscriminatory, and nonpretextual reasons for the selection—that the selectees were better qualified candidates. These reasons were detailed in the testimony of each of the individuals involved in the selection process, and are further highlighted in the SF–171 applications provided to the Court.

The plaintiff attempts to demonstrate pretext by alleging that Powell was not qualified for the GS–334–14 Supervisory Computer Specialist position under the governing personnel qualification standards because he spent only three months as a GS–334–13 Program Manager prior to applying for the position. This experience, the plaintiff claims, falls below the one year minimum experience required for a person to apply for a promotion from a Grade 13 to a Grade 14 position. The plaintiff's argument, however, ignores Powell's previous 10 months of experience as a GM–391–13 Computer Program Manager working with computer telecommunications hardware and software. Def. Exh. 10. Thus, Powell was qualified for the position because he also had an additional ten months experience in an "equivalent" Grade 13 position in another section of the Naval

Computer & Telecommunication Center. Def. Exh. 2.

Plaintiff further alleges that Powell's application was facially unqualified for consideration because he failed to include a description of his education background. This claim finds no support in the personnel qualification standards. Notably, while lower grade levels specifically require a minimum level of education, the standards in place at the time of the selection have no educational requirements for grade levels over a GS–12. Def. Exh. 2. Instead, the only qualification requirement is practical experience, which Powell clearly possessed. *Id.*

The plaintiff contended that the manner by which the vacancy announcement was worded, with the requirement for "open systems" experience, should be recognized as another barrier for discrimination alleged here on the part of the defendant. However, witnesses at trial convinced the Court that this argument has no basis. Specifically, Buckler testified that "open systems" is a term of art that includes diverse systems communicating with each other via standard protocols. Furthermore, Buckler testified that open systems experience was a requirement for the position and that someone with the requisite qualifications for the position would have understood what the term "open system" meant. From the record, the Court finds that, although the plaintiff may have had some generalized exposure to open systems, she did not possess the direct experience and training in open systems that the two selectees had.

■ Finally, the plaintiff attempts to demonstrate a pretext by pointing out that two persons were selected after the vacancy announcement advertised only one position open. The plaintiff claims that this violates the personnel regulations. Nevertheless, it was within personnel regulations to choose an additional applicant for a position that is similar to the one advertised and that became available within 90 days of the issuance of the Selection Certificate. Def. Exh. 1. Because the second position here was identical to the original position described in Vacancy Announcement No. 110–13, Buckler

was within the procedures set forth in the Merit Promotion Plan when he selected Powell for the newly created vacancy.[3]

■ The plaintiff did not show that the defendant's legitimate, non-discriminatory reason for her non-selection was a pretext for discrimination of any kind. The Court concludes that the record is devoid of evidence that the defendant's non-discriminatory reason for selecting two white males in this case was a pretext for discrimination against the plaintiff.

In short, the plaintiff did not sustain her burden of proof and, while she may have made out a prima facie case, it is clear that, by virtue of the foregoing and the record herein, she is entitled to no relief. This is regrettable in view of the fact that the Court has observed her during the trial and at pretrial as being a reasonable person and, therefore, extends to her its good wishes for a long and satisfying retirement.

### CONCLUSION

For the foregoing reasons, the Court shall enter final judgment in favor of the defendant in the above-captioned case. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

---

**3.** Under the Merit Promotion Procedures, a selecting official may use Selection Certificate to fill an unanticipated vacancy arising after the initial Standard Form 52 was submitted, so long as the new vacancy has the same title, series, grade qualification requirements, and evaluation factors as the position originally advertised, and the selection is made within 90 days from the original issuance of the Selection Certificate. Def. Exh. 1. The plaintiff complained that, by filling the one vacancy position with two persons, it discriminated against the plaintiff twice. The Court rejects this argument.