945 F.Supp. 193 (1996)
Darrell KEMPCKE, Plaintiff,
v.
MONSANTO COMPANY, Defendant.
No. 4:95CV01047 GFG.
United States District Court, E.D. Missouri, Eastern Division.
November 20, 1996.
*194 David C. Howard, Howard and Associates, St. Louis, MO, for plaintiff.
Kenneth R. Heineman, Managing Partner, Ellen F. Cruickshank, Thompson Coburn, St. Louis, MO, William T. Weidle, Jr., St. Louis, MO, for defendant.

MEMORANDUM AND ORDER
GUNN, District Judge.
This matter is before the Court on defendant's motion for summary judgment. Darrell Kempcke filed this action against his former employer, Monsanto Company, claiming that his termination was on the basis of his age and in retaliation for his protected activity, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, and the Missouri Human Rights Act (MHRA), Mo.Rev.Stat. § 213.055.
For purposes of the motion before the Court, the record establishes the following. Kempcke, born on December 31, 1944, began working for Monsanto in 1971. In approximately 1990 he became a senior training manager in Monsanto's Global Operations Division. Prior to the incidents underlying this lawsuit, on three occasions when Kempcke was over the age of 40 he was denied a position he wanted, having been told that the positions were for "young promotables." (Kempcke Depo. at 177-80).[1] Kempcke's performance evaluation for 1992 stated that his performance was well above the expected level.
In late 1992/early 1993 Kempcke was assigned a personal computer which had previously been used by Bud Garrison, a director in the Human Resources Department and Kempcke's prior supervisor. On May 20, 1993, while deleting old word-processing files from the computer to obtain more hard-drive storage space, Kempcke came across several *195 documents which had been left in the hard drive by Garrison.
One of these documents, prepared by Garrison, and last revised in the fall of 1992, was an "Organization Upgrade Plan" for the Global Operations Division's U.S. sales organization. The plan called for the reduction of manager positions to be accomplished by "outplacement/reassignment," attrition or replacement. Each of the 59 managers in the division was placed in one of the following categories: 1. MUST KEEP; 2. WANT TO KEEP; 3. CLOSE CALL  (a) those who probably will address their development needs and grow, (b) those who probably will not grow; and 4. REMOVE FROM POSITION. Kempcke was in the 3(b) category.[2]
The document stated that the "upgrade" process would continue over the next 24 months with high priority moves  replacing those in category 4  to take place in the next 12 months. The document noted as a "potential problem" that all 15 people "identified for upgrade" (i.e., in categories 3(b) and 4) were age 40 or over,[3] with several of these (including Kempcke) anticipated to make age an issue. Thus, the document stated, "[a] thorough analysis of our potential problems must be completed before we move forward with the upgrade plan."
Kempcke attested by affidavit that at the time he found the document, three of the 15 people identified for upgrade had already been "downgraded" and six others were "on their way out in the near future." He further attested that as of August 1996, the date of the affidavit, all 15 had been demoted, fired or separated from Monsanto.
Another document Kempcke retrieved on May 20, 1993, was a letter dated June 21, 1991, from one high-ranking Monsanto executive to another regarding the need to be aggressive in looking for development opportunities for young people in the organization.
Kempcke, distraught over the upgrade document, confronted Garrison protesting that all 15 people in categories 3(b) and 4 were over the age of 40. He informed several co-workers about the contents of this document and made photocopies at home of all the retrieved documents, giving a set to his attorney and to a friend for safekeeping.
On May 29, 1993, Kempcke complained to his current supervisor, James Schafbuch, about the age discrimination of the planned upgrade and told him he wanted to leave Monsanto and would do so for an outplacement package worth approximately $1.2 million.[4] This offer was refused a few days later, and on June 2, Schafbuch sent Kempcke the following memorandum:
Confirming our phone conversation today, the company confidential personnel planning information which you came in possession of via Bud Garrison's old computer is to be destroyed, as per Bud's previous instruction to you. This information is not to be shared, circulated or communicated to any one else. We will consider this a very serious act of insubordination if a breach occurs.
The record includes similar letters to Kempcke from Schafbuch dated June 8 and *196 June 11, the latter one stating that if Kempcke did not return all the Monsanto documents he had taken, by 7:30 a.m. June 14, 1993, together with a list of the individuals to whom he either gave the documents or communicated their contents, he would be immediately terminated for insubordination, breach of his duty of loyalty to Monsanto, and wrongfully removing property from Monsanto.
Kempcke testified by deposition that Schafbuch told him orally that to retain his job Kempcke would also have to sign a release giving up all legal rights to ever bring any suit against Monsanto (Depo. at 25, 184-85). Kempcke did not comply with Schafbuch's conditions and Schafbuch fired him on June 14, 1993.
Summary judgment is appropriate if the record shows that "there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party in determining whether a genuine issue for trial exists. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir.1995).
Under the ADEA it is "unlawful for an employer ... to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). Persons over 40 years of age are protected by this provision. Id. § 631(a). It is also unlawful for an employer "to discriminate against any of his employees ... because such individual ... has opposed any practice made unlawful under this [Act], or ... has made a charge, testified, assisted, or participated in an investigation, proceeding, or litigation under this [Act]." Id. § 623(d).
Kempcke first argues that he has produced sufficient direct evidence that age was a motivating factor in his termination to avoid summary judgment. If direct evidence establishes that discrimination was a motivating factor in an adverse employment decision, the employer can not escape liability by proving that it would have made the same decision for nondiscriminatory reasons. Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir.1995) (explaining statutory modification of mixed-motive standard set forth in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).[5]
Comments which demonstrate discriminatory animus in the decisional process, or "those uttered by individuals closely involved in employment decisions may constitute direct evidence within the meaning of Price Waterhouse." Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir.1991). Statements by nondecisionmakers, or statements by decisionmakers which are unrelated to the decisional process, do not constitute direct evidence. Id. When a terminated plaintiff relies on a discriminatory attitude to support a direct-evidence theory, he must also show that the attitude had a causal relationship to his termination. Hutson, 63 F.3d at 780; Sargent v. Paul, 16 F.3d 946, 948 (8th Cir.1994). At the summary judgment stage, the evidence must be sufficient to "raise a jury issue as to whether age-related animus played a role" in the discharge. Hutson, 63 F.3d at 780.
Upon careful consideration, the Court concludes that Kempcke has failed to raise a jury question on a direct-evidence theory. Cf., e.g., Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1324 (8th Cir.1994) (supervisor's comment that "women were the worst thing" to happen to corporation warranted treatment under Price Waterhouse even though comment not made during decisional process); Beshears, 930 F.2d at 1354 (statements by managerial personnel that older employees have problems adapting to changes and to new policies and that younger people were more adaptable to employer's policies warranted application of Price Waterhouse); Burns v. Gadsden State Community College, 908 F.2d 1512, 1517-19 (11th Cir.1990) (statement that "no woman would be named to a B scheduled job" was direct *197 evidence of discriminatory motive when author of statement made employment decision at issue); EEOC v. Alton Packaging Corp., 901 F.2d 920, 923-25 (11th Cir.1990) (statement by plant manager that "if it was his company he wouldn't hire any black people" and statement by production manager to black employee that "you people can't do a ___ thing right" constituted direct evidence of discrimination); Perry v. Kunz, 878 F.2d 1056, 1060-61 (8th Cir.1989) (statements by decisionmakers that plaintiff would be terminated because she was "up in age" and would not retire constituted direct evidence of discrimination).
In recognition of the fact that explicit, inculpatory evidence of discriminatory intent is rare, an alternative method of proof has been established by which an inference of intentional discrimination can be raised. Hutson, 63 F.3d at 776. Under this method, as explained in St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507-09, 113 S.Ct. 2742, 2747-2748, 125 L.Ed.2d 407 (1993), the plaintiff creates this inference by establishing a prima facie case. When a termination is not part of a reduction-in-force (RIF), the elements of a prima facie case are that (1) plaintiff was within the protected age group, (2) he met applicable job qualifications, (3) he was discharged, and (4) he was replaced by a "substantially younger" person. O'Connor v. Consolidated Coin Caterers Corp., ___ U.S. ___, ___, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). In a RIF case, the fourth element is replaced by a need to make some "additional showing" that age was a factor in the termination. Aucutt v. Six Flags Over Mid-America, Inc. 85 F.3d 1311, 1316 (8th Cir.1996).
If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the termination was for a legitimate, nondiscriminatory reason; if the defendant fails to produce such evidence, the plaintiff is entitled to judgment. If the defendant carries his burden of production, the presumption raised by the prima facie case is rebutted and drops out of the case. Hicks, 509 U.S. at 507-09, 113 S.Ct. at 2747-2748. The plaintiff, retaining the ultimate burden of establishing that he has been the victim of intentional discrimination, then has the opportunity to demonstrate that the proffered reason was not the true reason for the termination and that discrimination was. Id.
Hicks stemmed from an appeal from a bench trial. In Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996), the Eighth Circuit applied Hicks to the summary judgment context:
The rule in this Circuit is that an age-discrimination plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether that employer's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the [termination] decision. The second part of this test sometimes may be satisfied without additional evidence where the overall strength of the prima facie case and the evidence of pretext suffice to show intentional discrimination.
Here Kempcke has established a prima facie case of age discrimination.[6] Upon careful review of the record, however, the Court concludes that there is insufficient evidence from which it can be reasonably inferred that Monsanto's proffered reason for the termination, namely Kempcke's refusal to return the personnel documents, was pretextual. He was specifically warned that he would be fired if he failed to return all copies of the documents along with a list of persons to whom he had revealed their contents. Kempcke's attempts to show that Monsanto's firing practices for security breaches were inconsistent fail to create a factual question on this matter.
The factual dispute as to whether Schafbuch also required Kempcke to sign a waiver of his rights to sue Monsanto is not material. Kempcke did not comply with the condition that he return the documents, which, in and of itself, supported the termination. *198 Kempcke has cited no cases for the proposition that requiring a release, in addition to the return of the documents, would have been a violation of the ADEA. While such a release may not be enforceable, conditioning Kempcke's continued employment upon it does not create a jury question as to whether age was a determinative factor in the termination. Furthermore, the Court believes that under the circumstances of this case, such a release may well have been valid. See Runyan v. National Cash Register Corp., 787 F.2d 1039, 1043-45 (6th Cir.1986) (conditioning additional pay during term of consulting contract with ex-employee following termination which ex-employee believed was based on age discrimination, upon release of ADEA claims), cited with approval in Lancaster v. Buerkle Buick Honda Co., 809 F.2d 539, 540 (8th Cir.1987).
To establish a prima facie case of retaliation in violation of § 623(d), an employee must show that (1) he was engaged in conduct protected under the ADEA, (2) he was subjected to an adverse employment action, and (3) there was a causal link between the two events. Wiehoff v. GTE Directories Corp., 61 F.3d 588, 598-98 (8th Cir.1995); Wentz v. Maryland Cas. Co., 869 F.2d 1153, 1154-55 (8th Cir.1989). Upon review of the record the Court concludes that no reasonable jury could find that Kempcke's conduct of removing from Monsanto's premises, photocopying, disseminating and refusing to return all copies of the documents in question was protected activity. See O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 763-64 (9th Cir.1996) (removing from supervisor's desk confidential management files ranking employees for layoffs, photocopying files to preserve evidence for future suit against employer, and showing file to co-worker not protected activity under § 623(d); summary judgment in favor of employer on retaliation claim in "after-acquired evidence" case affirmed); Jefferies v. Harris County Community Action Ass'n, 615 F.2d 1025, 1036-37 (5th Cir.1996) (employee's copying confidential document which she believed showed that employer engaged in unlawful employment practice not protected activity under Title VII's analogous retaliation provision). Although Kempcke found the documents innocently enough, his subsequent actions were not protected under the ADEA as a matter of law.
Kempcke's MHRA claims fail for the same reasons his ADEA claims fail. See Garner v. Arvin Indus., Inc., 77 F.3d 255, 257 n. 2 (8th Cir.1996).
Accordingly,
IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted.
IT IS FURTHER ORDERED that all other pending motions are denied as moot.
NOTES
[1] Kempcke filed no charges based on this.
[2] MUST KEEP included 21 persons, ages: 29, 30, 30, 31, 32, 32, 33, 36, 37, 37, 38, 38, 40, 43, 44, 44, 45, 45, 50, 54, 55.

WANT TO KEEP included 15 persons, ages: 31, 32, 32, 34, 35, 36, 39, 40, 41, 42, 42, 43, 44, 50, 53.
CLOSE CALLS (a) included 8 persons, ages: 34, 35, 38, 39, 46, 46, 47, 50.
CLOSE CALLS (b) included 7 persons, ages: 39, 39, 40, 45, 46, 46, 47 [Kempcke].
REMOVE FROM POSITION included 8 persons, ages: 39, 41, 43, 45, 48, 51, 52, 52.
These ages are as of October 1, 1992 (the approximate date the document was last revised before the computer was transferred to Kempcke) based on the dates of birth provided in the Appendix to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment. The assertion in Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (at 5) that the upgrade document listed each employee's age next to his/her name is contrary to the record.
[3] The Court notes that as of October 1, 1992, three people in these categories were 39 years old. If the priority stage of the "upgrade" were implemented over 12 months, it is quite possible all affected would have been 40 or above when affected.
[4] Kempcke proposed an alternative package as well but the record is not clear on the terms of this alternative.
[5] Fuller v. Phipps and Price Waterhouse v. Hopkins are Title VII cases; the analysis, however, applies with equal force to claims under the ADEA. See Hutson, 63 F.3d at 776; see also O'Connor v. Consolidated Coin Caterers Corp., ___ U.S. ___, ___, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996).
[6] Monsanto's disingenuous assertion that there has been no adverse employment action in this case (Suggestion's in Support of its Motion for Summary Judgment on Age Counts at 2, on Retaliation Counts at 2-3) does not warrant discussion. Monsanto's other arguments that Kempcke did not establish a prima facie case are equally without merit.