**Susan V. SIMENS**

**v.**

**Janet RENO, in her capacity as United States Attorney General**

**Civil Action No. 96–1091 (RCL).**

United States District Court,
D. Columbia.

March 24, 1997.

Mary Jane Saunders, James William Morrison, Arter & Hadden, Washington, DC, for Plaintiff.

Mary E. Kostel, Jennifer R. Rivera, Civil Division, Federal Programs Branch, U.S. Dept. of Justice, Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on defendant's motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons stated below, defendant's motion is granted as to Counts I and II, and denied as to Count III.

## I. BACKGROUND

Plaintiff Susan V. Simens, a white female who works as a Special Agent for the Federal Bureau of Investigation ("FBI"), was hired by the Bureau in 1979. Pl.'s Comp., May 13, 1996 paras. 11, 13. Plaintiff was initially assigned to the New York Field Office of the FBI, where she remained until 1984. Simens alleges that during this time she "raised issues relating to gender-based discrimination," and from that time until this day, she "has been the victim of Defendant's systemic gender-based discrimination." Pl.'s Comp. para. 13.

In 1984, plaintiff was transferred to the United States Capitol, then, in July of 1990 to the Washington Field Office. In March of 1991 she was transferred to FBI headquarters in the District of Columbia, where, she claims, "[d]efendant also increased its level of unlawful systemic discrimination and hostile workplace against [p]laintiff all in violation of the federal civil rights laws." Pl.'s Comp. para. 15. Plaintiff has alleged three counts of sex discrimination and retaliation.

## II. DISCUSSION

On a motion for judgment on the pleadings under 12(c) of the Federal Rules of Civil Procedure, a court may not look at facts outside the pleadings, and furthermore, the moving party must demonstrate that no material fact is in dispute and that it is entitled to judgment as a matter of law. *Peters v. Nat'l. Railroad Passenger Corp.*, 966 F.2d 1483, 1485 (D.C.Cir.1992); *see also Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir.1988)(stating that all facts presented in the pleadings and any inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party). Importantly, a complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). These are difficult requirements to overcome, but by no means impossible.

### A. *Gender Discrimination in Counts I and II*

█ Plaintiff puts forth three separate counts for her complaint. Count I alleges that she applied for a GM–14 Supervisory Special Agent position, advertised April 25, 1989, but the position was canceled. It was readvertised in September of that year, and Simens reapplied. Simens was not selected,

but rather another woman, a woman Simens claims was less qualified for the position, was chosen instead. Simens argues that the selection board's "decision was [based] on [p]laintiff's gender, and was a pretext and subterfuge to unlawfully discriminate against [p]laintiff." Comp. para. 25. She also claims she was not selected as a form of retaliation.

■ As a matter of law, considering the pleadings alone, plaintiff cannot make out a prima facie case of sex discrimination. Under the familiar prima facie test for failure to promote in violation of Title VII, a plaintiff must show (1) she belongs to a protected group; (2) she was qualified and applied for a promotion; (3) she was considered for and denied the promotion; and (4) other employees not members of the protected group were promoted at the time plaintiff's request for a promotion was denied. *Johnson v. Brock,* 810 F.2d 219, 223 (D.C.Cir.1987) *citing Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir. 1981).

According to plaintiff, another woman was promoted instead of her. Thus, by her own admission, plaintiff has failed to show that an employee not a member of her protected group (female) was promoted instead.

But Simens says take one giant step backwards. She believes that the fourth prong of the prima facie case no longer exists. According to Simens, the United States Supreme Court, in a brief, unanimous opinion written by Justice Scalia in *O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), has completely eradicated the prima facie requirement that a member of a non-protected class be promoted instead of the plaintiff.

In *O'Connor,* the Court looked at a claim under the Age Discrimination in Employment Act ("ADEA") where a 56 year-old plaintiff was fired and replaced by a 40 year-old worker. The Court held that the *McDonnell Douglas* prima facie framework [1] is applicable to ADEA claims, but because employees aged 40 and over are covered by the ADEA, an issue was raised as to whether the plaintiff could state a prima facie case given in the face of a prima facie require-

ment that a replacement be outside the protected class. The Court said the plaintiff could press his age discrimination claim notwithstanding that fact. With respect to the ADEA, it is not a sine qua non that a protected person be replaced by someone outside the protected class. As the Court stated

[t]he ADEA does not ban discrimination against employees because they are aged 40 or over; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older. The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age. Or, to put the point more concretely, there can be no greater inference of age discrimination (as opposed to '40 or over' discrimination) when a 40 year-old is replaced by a 39 year-old than when a 56 year-old is replaced by a 40 year-old. Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case.

*Id.* at ——, 116 S.Ct. at 1310.

Looking to *O'Connor*'s reasoning, Simens argues that the fact that she was passed over for promotion in favor of another woman should not prevent her from meeting her prima facie burden simply because the person receiving the promotion instead of her is within the same protective class.

But this reasoning clearly cannot be imported to the Title VII context for reasons stated by the *O'Connor* Court itself. The Court proffered that the solution of how to deal with the final element of the prima facie case lay not with making an "utterly irrelevant factor"—whether the person hired or promoted was aged 40 or over—an element, but rather by recognizing that the prima facie case requires " 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion. . . . ' In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with

---

**1.** *McDonnell Douglas v. Green,* 411 U.S. 792,   802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

another worker insignificantly younger." *Id. citing International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977).

In other words, the court believed that the *level of age disparity,* as opposed to whether or not one is over or under age 40, was "a far more reliable indicator of age discrimination." *Id.* Under Title VII, there can be no issue of the *level* of sex disparity. You are either a woman or you are not. Thus, inferences of discrimination are easy to draw—or in this case, not draw. Here, there can be no inference of gender discrimination because no inference of unlawful discrimination can be drawn from the fact that one woman was hired in place of another. This is quite different from the age discrimination context.

Plaintiff directs the court to *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 158 (7th Cir.1996) where that court found *O'Connor* applicable in the Title VII context, finding that a white employee, replaced by another white employee, should not be prevented from meeting her prima facie case for that reason alone. "The question instead is whether the plaintiff has established a logical reason to believe that the decision rests on a legally forbidden ground. That one's replacement is of another race, sex, or age may help to raise an inference of discrimination, but it is neither a sufficient nor a necessary condition." *Carson,* 82 F.3d at 159.[2] Defendant responds that this might be true for the discharge and subsequent hiring of a replacement employee who is in the same class, but certainly not in the case where two people simultaneously apply for the position, both of whom are members of a protected class, where one is hired in the other is not. There, defendant argues, no prima facie case can be made.[3]

The problem with using class membership in the prima facie equation in *O'Connor* was simply that it was not probative of whether there was discrimination on the basis of age. And, in fact, lower courts interpreting *O'Connor* in the ADEA context have altered the fourth prong of the prima facie case in failure to promote or termination cases to require that the person promoted or hired in his stead be "a substantially younger person" as opposed to simply outside the protected class. *Kempcke v. Monsanto Co.,* 945 F.Supp. 193, 197 (E.D.Mo.1996); *Skinner v. Brown,* 951 F.Supp. 1307, 1314–15 (S.D.Tex. 1996). Age difference is what is probative, not class membership in the ADEA context. In Title VII, however, class membership itself is probative.

To reduce the prima facie requirements to merely (1) membership in a protected class, (2) that plaintiff was qualified for the position or promotion, and (3) subsequent termination or failure to promote, would give complete weightlessness to an already light plaintiff's burden. *See, e.g., Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (stating, "the burden of establishing a prima facie case of disparate treatment is not onerous"). But, in effect, Simens wants the court to infer gender discrimination without having to show even the most basic factors which would allow the court to make such an inference.[4]

---

**2.** *Carson* went even further, suggesting that after *O'Connor,* statements to the effect that a plaintiff must show his replacement is of another race, sex, or age "cannot be considered authoritative." *Carson,* 82 F.3d at 159.

**3.** In *Hartsel v. Keys,* the United States Court of Appeals for the Sixth Circuit contradicted *Carson's* interpretation of *O'Connor* to the extent that *Carson* suggests there is no longer a fourth *McDonnell Douglas* prong. 87 F.3d 795, 800 (6th Cir.1996). *Hartsel,* while stating that the *McDonnell Douglas* framework applied to both sex and age, clearly indicated its belief that *O'Connor* was restricted to ADEA and as well maintained the fourth prong of *McDonnell Douglas* but in a merely slightly altered form to re-

quire that "the replacement need not be younger than 40 [to state a prima facie case], although difference in age between the plaintiff and the younger replacement may be probative of ageist bias." *Id.*

**4.** It is important to remember why courts use the prima facie case in first place. Because a plaintiff often lacks direct evidence of discriminatory intent, the plaintiff must create a circumstantial case. In *McDonnell Douglas,* the Supreme Court created a framework for inferring discrimination; a plaintiff must allege very elemental facts which allow a supposition of discrimination. The burden then shifts to the defendant to provide a non-discriminatory reason for the actions taken. If that is done, the plaintiff has the final

It is true that the *McDonnell Douglas* framework was never intended to be "rigid, mechanized, or ritualistic," but instead to be a way of evaluating circumstantial evidence and the way it comes to bear on "the critical question of discrimination." *United States Postal Service v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) *citing Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978). However, this court cannot imagine that in a Title VII disparate treatment case, a plaintiff can meet her prima facie burden without circumstantial evidence of *disparate* treatment. Though there may be some imaginable circumstance where a woman can make a prima facie showing of gender discrimination in a case such as this without showing that someone outside her protected class received the promotion or replaced her, it goes without saying that some other facts of a commensurately forceful nature must be put forth to create the same inference of discrimination that would arise had the job or the promotion been given to a man. Such facts are not present in this case. Thus, Counts I and II of plaintiff's complaint, insofar as they allege gender discrimination under Title VII, are dismissed for failure to state a prima facie case.

■ Counts I and II also contain claims for retaliation. To state a prima facie case for retaliation, a plaintiff must allege (1) she engaged in statutorily protected activity; (2) the employer engaged in conduct having an adverse impact on the plaintiff; and (3) there is a causal link between the protected activity and the adverse action. *Passer v. American Chemical Soc.*, 935 F.2d 322, 331 (D.C.Cir. 1991) *citing Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1423, 1425, *supplemented on other grounds on reh'g*, 852 F.2d 619 (D.C.Cir.1988)(per cu-

riam), *cert. denied*, 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1018 (1989).

Simens alleges that she engaged in statutorily protected activity "extending back to 1984," and that she was not selected for the GM–14 Intelligence Division Position in 1989 as act of reprisal "because of her engaging in protected activity against the Defendant." But plaintiff alleges no further facts that would lead the court to infer that she was denied a promotion as a matter of reprisal. All she has said, in more basic terms, is "I think I didn't get the job because of retaliation." That does not meet Simens' prima facie burden. She must allege, for example, that deciding officials knew of her protected activities and then denied her a promotion. This could raise such an inference. But Simens has not done this. Thus, her counts of retaliation under Counts I and II of her complaint are dismissed, as well, for failure to state a prima facie case.

■ Count III of Simens's complaint alleges that on August 2, 1987 she was promoted to GS–14 Team Leader position on the House Appropriations Committee, Surveys and Investigations Staff. Pl.'s Comp. para. 37. Then she alleges that a memorandum from an FBI senior manager recommended her promotion to GM–14, which plaintiff states is "financially more advantageous than a GS–14 position." Id. para. 38. She was never promoted to GM–14, only GS–14; between 1984 and 1990, nine male Special Agents at the GS–14 level were laterally transferred to FBI headquarters while Simens was the only woman not be laterally moved to FBI headquarters. Simens then alleges that if she were male she would have been so moved, a move she claims is important for career advancement. When she was reassigned to FBI headquarters, it was from a GS–14 to GS–13 position. She further

burden of proving, by a preponderance of the evidence that the employer's reason is pretextual. 411 U.S. at 802–04, 93 S.Ct. at 1824–25. But without the prima facie case, there is nothing from which to infer discrimination. In *Bundy v. Jackson*, our Circuit stated that a prima facie case "constitutes proof of actions taken by the employer from which we can reasonably infer a discriminatory animus...." 641 F.2d at 951. A plaintiff cannot just shoot into a barrel of fish—that would invariably open the door to the filing

of frivolous and vexatious Title VII complaints. And in these times, when a defendant is the target of a discrimination complaint, there are significant, wide-reaching consequences for that defendant's reputation and resources. At the very least, when a plaintiff has no direct evidence of discriminatory intent, she must provide the court with at least with something reasonable on which to rest a claim. This is the function performed by the prima facie case.

argues this is a demotion and that it was done in retaliation for an Equal Employment Opportunity Complaint she filed.

 Here, the court finds, with respect to both discrimination as well as retaliation for filing an EEO complaint, plaintiff has met her prima facie burden, at least to survive a motion to dismiss on the pleadings. The defendant argues that the "demotion" was not an adverse action, but occurred automatically because her GS–14 position was inherently temporary. Further, the Government argues that there were no similarly situated males. But defendant looks to facts outside the pleadings to prove these contentions, and this is inappropriate for 12(c) dismissals. As the defendant has not moved for summary judgment, Count III may not yet be disposed of as a matter of law.

### III. CONCLUSION

For the reasons stated above, defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is hereby GRANTED with respect to Counts I and II of plaintiff's complaint, and Counts I and II are hereby DISMISSED. Defendant's motion is DENIED with respect to count III, however.

SO ORDERED.