Robert YOUNG, Plaintiff,

v.

WARNER–JENKINSON CO., INC., Defendant.

No. 4:96 CV 1890 DDN.

United States District Court,
E.D. Missouri,
Eastern Division.

Dec. 19, 1997.

Robert J. Radice, Horas and Radice, L.L.C., St. Louis, MO, Kenneth E. Fleischmann, St. Louis, MO, for Robert Young.

James N. Foster, Jr., Partner, John B. Renick, Associate, Stephen B. Maule, McMahon and Berger, St. Louis, MO, for Warner–Jenkinson Company, Inc.

## MEMORANDUM

NOCE, United States Magistrate Judge.

This matter is before the Court on defendant's motion for summary judgment (Doc. No. 37)[1] on plaintiff's second amended complaint (Doc. No. 31). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Oral argument was heard on this motion on October 2, 1997.

Plaintiff Robert Young commenced this action, alleging that defendant Warner–Jenkinson Co., his former employer, discriminated against him on the basis of race and disability, in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.; Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1981; the Missouri Human Rights Act ("MHRA"), Mo.Rev. Stat. § 213.010 et seq.; and Mo.Rev.Stat. § 287.780, retaliation for exercising his rights under the Missouri workers' compensation laws.

Plaintiff alleges that he applied for several full-time regular positions with defendant's company but such employment was denied on the basis of race or disability or both, and that he was fired from his full-time temporary position with defendant's company because of race or disability, in retaliation for having filed a worker's compensation claim, or a combination thereof. Pl.Mem., Doc. No. 40, at 1.

The undisputed facts are as follows. Plaintiff is an African–American, hired by defendant on November 1, 1993 as a full-time but temporary employee. He was assigned to the maintenance department at defendant's plant in St. Louis. He suffered from no disability at the time of hiring. On March 17, 1994 plaintiff was seriously injured at work when an overhead door damaged his foot, ultimately requiring partial amputation. He filed a worker's compensation claim, agreeing to a compromise settlement in June 1994. He returned to work, with the aid of a prosthesis, in October 1994. He was medically released from work restrictions in March 1995. In April or May of 1995 he was diagnosed with diabetes. He was transferred to the dispersions department in August 1995. In December 1995 he was involuntarily discharged by defendant. Def. Mem., Doc. No. 37, 1–8; Pl.Mem., Doc. No. 40, 2–3. During plaintiff's employment, his supervisors included Ed Crumer, manager of employee relations at the plant (who replaced Andrew Hollimon, manager when plaintiff was hired); Jim Huck, manager of maintenance; Al Schneider, foreman of dispersions; and Dan Lauff, plant manager.

Defendant has moved for summary judgment on all counts. Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The nonmovant's evidence is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, in the employment discrimination context "summary judgments should be used sparingly." *Chock v. Northwest Airlines*, 113 F.3d 861, 862 (8th Cir.

---

1. Citations to "Doc. No. ___" in this opinion refer to the numbers chronologically assigned by the Clerk of Court to documents filed in this action.

1997); *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994).

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of race, gender, religion or national origin. The order and allocation of proof in cases where there is no direct evidence of discrimination is governed by the three-stage burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) *See Jetton v. McDonnell Douglas Corp.*, 121 F.3d 423, 425 (8th Cir.1997). This analysis is also used for claims under 42 U.S.C. § 1981, the ADA, and the MHRA. *Roxas v. Presentation College*, 90 F.3d 310, 315 (8th Cir.1996); *Price v. S–B Power Tool*, 75 F.3d 362, 364–65 (8th Cir.1996), *cert denied*, —— U.S. ——, 117 S.Ct. 274, 136 L.Ed.2d 197 (1996); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510–11 (8th Cir.1995).

Initially, the plaintiff must establish a prima facie case of discrimination; if done, the burden shifts to the defendant employer, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action, in order to rebut a presumption of discrimination; if done, the presumption drops, and plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision, i.e., may prove pretext. *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir.1994). However, at all times, the plaintiff retains the ultimate burden of persuasion to show the adverse employment action was a result of intentional, unlawful discrimination. *Kobrin v. University of Minnesota*, 121 F.3d 408, 413–14 (*Kobrin* II)(8th Cir.1997). To succeed against a motion for summary judgment, plaintiff must present sufficient evidence of intentional discrimination by defendant to create a genuine issue of fact for trial. *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1337 (8th Cir.1996).

The following elements will establish a prima facie case of racial discrimination in a Title VII analysis: (1) plaintiff is a member of a protected class; (2) plaintiff met applicable job qualifications; (3) despite qualifications, adverse employment action was taken against him; and (4) the action occurred in circumstances giving rise to an inference of discriminatory motivation. *Thomas v. Runyon*, 108 F.3d 957, 959 (8th Cir.1997); *Williams v. Ford Motor Co.*, 14 F.3d at 1308. To establish a prima facie case under the ADA, plaintiff must show that he 1) is a disabled person within the meaning of the ADA; 2) is qualified to perform the essential functions of the job (either with or without reasonable accommodation); and 3) has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises. *Price v. S–B Power Tool*, 75 F.3d 362, 365 (8th Cir.1996); *Poynton v. Special Sch.Dist. of St. Louis Co.*, 949 F.Supp. 1407, 1413 (E.D.Mo.1996).

**I.**

*A. Failure to Hire or Promote.*

Plaintiff claims that defendant refused to hire him for four jobs because of his race and/or disability. Plaintiff admits that defendant refused to hire him for six jobs before his injury, but not because of illegal discrimination. Pl.Mem., Doc. No. 40, at 12. Plaintiff argued at the hearing that the post-injury failure-to-hire claims mainly involved his disability but that race also played a part.

Under Title VII it is an unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Under the ADA it is unlawful to discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A plaintiff may prove disability by showing that he either (1) has a disability as defined under the ADA, (2) suffers from a

history of such a disability, or (3) is perceived by his employer as having such a disability. 42 U.S.C. § 12102(2)(A)–(C); *Snow v. Ridgeview Medical Center,* 128 F.3d 1201, 1205, 1206–07 n. 3 (8th Cir.1997). Disability is defined as a physical or mental impairment that substantially limits one or more of the plaintiff's major life activities; these include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, sitting, standing or lifting. *Id.,* at 1206 and 1206–07 n. 3. The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working; rather, the impairment must prevent the appellant from performing an entire class or broad range of jobs as compared to the average person possessing comparable training, skills and abilities. *Id.,* at 1206; *Aucutt v. Six Flags Over Mid Am., Inc.,* 85 F.3d 1311, 1319 (8th Cir. 1996). The availability and use of a mitigating measure, such as a prosthetic device, is not to be considered in the determination. *Doane v. City Of Omaha,* 115 F.3d 624, 627 (8th Cir.1997) (reh'g denied); *Sicard v. City of Sioux City,* 950 F.Supp. 1420, 1422–23 (N.D.Iowa, 1996).

■ Plaintiff asserts that he meets the prima facie requirements for both the racial discrimination and the disability discrimination claims. As an African–American, plaintiff is a member of a protected class. He applied for, and there is at least some evidence that he was qualified for several open positions. He was rejected for all of them. However, in three out of four of those cases, the positions were filled by African–Americans. Contrary to defendant s assertions (Def.Mot., Doc. No. 37 at 9), this last element is not dispositive of the racial discrimination claim. *Rinehart v. City of Independence,* 35 F.3d 1263, 1265–66 (8th Cir.1994) *cert. denied,* 514 U.S. 1096, 115 S.Ct. 1822, 131 L.Ed.2d 744 (1995) ("[W]e have consistently held in Title VII cases that proof that the plaintiff was replaced by a person outside the protected class is not required"); *Williams v. Ford Motor Co.,* 14 F.3d 1305, 1308 (8th Cir.1994); *Walker v. St. Anthony's Medical Center,* 881 F.2d 554, 558 (8th Cir.1989).[2] *But see Duffy v. Wolle,* 123 F.3d 1026, 1036 (8th Cir.1997) ("Under Title VII [female sex-discrimination plaintiff] must show that the employer hired a man for the position . . . ."). This may, of course, be weighed in drawing any inferences of discrimination. *Rinehart,* 35 F.3d at 1266; *see also Shannon v. Ford Motor Co.,* 72 F.3d 678, 684 (8th Cir.1996) ("[T]he alleged lack of black women supervisors does not support [a] race-discrimination claim, given that . . . several black men have been supervisors"). That said, it is still necessary for plaintiff to show that the failure to hire occurred under circumstances giving rise to an inference of racial discrimination. *Runyon,* 108 F.3d at 959. Plaintiff's prima facie case of race discrimination is not strong, but will be analyzed under the McDonnell–Douglas test nevertheless.

■ As to disability, plaintiff contends that he has made a prima facie case because he is a "disabled person" under the Act (Pl.Compl., Doc. No. 31, ¶ 1), was qualified to perform the essential functions of the jobs he applied for (*Id.* at ¶ 9), and was not hired, under circumstances giving rise to an inference of discrimination. *Id.* Given the Eighth Circuit's instruction that mitigating prosthetic devices are not to be considered in determining disability under the Act (*see Doane,* 115 F.3d at 627), the undersigned concludes plaintiff is disabled as a result of his partial amputation.

Plaintiff originally pleaded disability from diabetes (Pl.Compl., Doc. 32, ¶ 8), but has failed to provide any further evidence of its alleged effects on his major life activities; he has also testified that he does not think it played a role in his not being hired. Def.

---

2. The Court takes notice of a possible split in the Circuits on the issue of whether and when it is necessary for a Title VII or ADEA plaintiff to prove replacement by or rejection in favor of a person outside plaintiff's protected class, propelled by the brief, unanimous opinion of *O'Connor v. Consolidated Coin Caterers Corporation,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), *see, e.g. Simens v. Reno,* 960 F.Supp. 6, 9 (D.D.C.1997); *Leffel v. Valley Fin. Svcs.,* 113 F.3d 787, 792–93 (7th Cir.1997), and *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 158 (7th Cir.1996); *Hartsel v. Keys,* 87 F.3d 795, 800 (6th Cir.1996); however, here the issue is adequately provided for by Eighth Circuit case law.

Mem., Doc. No. 37(A) at 56. He also testified that it did not interfere with his work, except to the degree that he may have been dizzy, but this wore off; and he did not require, nor request, an accommodation or changes in his work or schedule. *Id.*, at 51. He further testified in deposition that he did not ask for any accommodations for his foot disability. Pl.Mem., Young Deposition, Doc. No. 40 at 82. As with the claims of race discrimination, there is some evidence that plaintiff was qualified for the jobs for which he applied, but there is no substantial evidence of disability discrimination. However, this claim will also be examined under the *McDonnell Douglas* analysis.

Where "the employer contends that the selected candidate was more qualified for the position than the plaintiff, a comparative analysis of the qualifications is relevant to determine whether there is reason to disbelieve the employer's proffered reason for its employment decision." *Chock*, 113 F.3d at 864.

Here, defendant generally provided notices to plaintiff and other unsuccessful applicants with a brief explanation of why the job was awarded to the winning candidate. The earlier six, about which plaintiff does not complain, are provided in appendix (C) of defendant's motion. Three of the four at issue are provided in plaintiff's memorandum at M. Smith Exh's 2–4.[3]

In considering the four positions about which plaintiff complains, the employees who were hired for these full-time regular positions had the relevant status at time of hiring as follows: 1) Paul Askins: white, not disabled, previously a temporary employee. 2) Kent Wheelington: African–American, not disabled, previously a temporary employee. 3) Fred Davis: African–American, not disabled, previously a temporary employee. 4) Jerome Smith: African–American, not disabled, not previously employed by defendant. Pl.Mem., Doc. No. 40, at 9–12. Fred Davis was severely injured at work subsequent to being hired, underwent rehabilitation, filed a worker's compensation claim and returned to his position. Pl.Mem., Davis Deposition, Doc. No. 40 at 6–15.

Askins was hired in September 1995 for the TPM/D & C/Special Products Helper position. The reasons given were overall experience, knowledge of paperwork systems, attendance and good work habits. Plaintiff argues that Askins had less seniority than he, no high school degree, and no experience on that job. Pl.Mem., Doc. No. 40 at 10, 21. Defendant contends that the "overall experience" and other positive attributes Askins possessed were the decisive factors; and while he may have had no experience in that job, neither did plaintiff. Def. Reply, Doc. No. 41, at 5.

Wheelington was hired in July 1995 for the GMP Custodian position. "Experience" was the reason provided in the rejection memo. Plaintiff argues that Wheelington had less seniority and no janitorial experience at all, in contrast to plaintiff. Pl.Mem., Doc. No. 40 at 10, 21. However, Wheelington testified that his previous job as a maintenance helper was the same type of work, with somewhat fewer cleaning duties. Def. Reply, Doc. No. 41 at 4–5.

Davis was hired in August 1995 for the Packaging Assistant position. The reasons given were "seniority and department experience." Plaintiff contends that Davis had a year's less seniority. Pl.Mem., Doc. No. 40, at 12, 21. Defendant responds that Davis was already on that job and had extensive experience in it as a temporary employee. Def. Reply, Doc. No. 41, at 5.

Smith was hired in May 1995 for the GMP custodian position. There is no rejection memorandum in the record. He was not employed by defendant at the time, and plaintiff contends that this is evidence of disparate treatment because defendant's policy was to hire temporary employees before outsiders. Pl.Mem., Doc. No. 40 at 12. There is evidence to the contrary, that defendant was not obliged to select from temporary workers ahead of non-employee applicants. Def. Reply, Doc. No. 41, at 4.

---

**3.** Defendant has filed a motion in limine (Doc. No. 50) regarding the award of the GMP custodian position to Jerome Smith in May 1995, because it is more than 180 days prior to plaintiff's filing of a complaint with the Missouri Human Rights Commission.

Moreover, Smith was working for a contractor as a janitor, and had worked at defendant's facility. *Id.*

Plaintiff argues that he was senior to most of these men, and none of them had better qualifications or experience than he. Id. at 21. However, seniority was not necessarily a factor, since it was a criterion used for "full time" employees, and managers could also base hiring choices on experience in the job. Def.Mot., Crumer Deposition, Doc. 37(C) at 26–28. Furthermore, the hiring status of a temporary employee was not necessarily any different than a person not employed by the company applying directly from the outside. *Id .*, at 28. However, as defendant points out, these men all had comparable levels of general qualifications, on-the-job experience, and defendant found them to have certain, more favorable characteristics such as attendance records. Def. Reply, Doc. No. 41, at 4–5. Askins was such an example, Smith was already on that job, as was Davis, and Wheelington's previous job was similar if not almost the same.

Nevertheless, in a letter to the Missouri Human Rights Commission, Universal Foods Corporation[4] attorney Darrell Foell stated:

Many of [plaintiff's] issues relate to the fact that he supposedly filed requests for employment as a regular employee. The Company has a long standing practice of posting jobs, but the postings are only available for regular full-time employees. Obviously, the Company does from time-to-time hire temporary employees as regular employees. They have no contractual right to be considered and are so advised during their tenure of employment.

Pl.Exh. 1, M. Smith deposition, Doc. No. 40.

This appears to be an attempt to explain defendant's failure to hire plaintiff as having less to do with his actual relative qualifications and more to do with his status as a temporary employee. Given that three out of four of the positions went to temporary employees, this rationale is unpersuasive.

Universal Foods Policies and Procedures number HR–19, issued April 1, 1992 describes defendant's policy regarding posting of job notices to all employees. Paragraph III, "eligibility" states: "All *regular full time and part-time* non-union employees of Universal Foods Corporation and its subsidiaries are eligible for consideration under this policy." Pl.Exh. 1, Crumer deposition, Doc. No. 40 at 41 (emphasis added). This does contradict Mr. Foell's statement insofar as part-time employees are concerned; as to whether these employees are entirely distinct from temporary employees the parties do not say.

In any event, defendant asserts in its motion for summary judgment that temporary employees are eligible for consideration, although only when no "full-time regular" employees are placed in the position. Def.Mot., Doc. No. 37 at 4. The company also solicited applicants through the newspaper. *Id.*

### B. Discharge.

Plaintiff claims that he was fired, and defendant claims that he was laid off. In fact, defendant specifically denied that plaintiff was fired (Def.Mot., Doc. No. 37 at 8; *id.* at 37(C) at 48; Def.Ans., Doc. No. 32, at 2, ¶ 10; letter from Universal Foods Corporation legal staff, Pl.Exh. 1, M. Smith Deposition, Doc. No. 40), although defendant's counsel contended at oral argument that the distinction was insignificant. Defendant does not use the term "reduction in force" (or RIF), but that is defendant's argument for why plaintiff's employment came to an involuntary end. Def.Mot., Doc. No. 37, at 8.

Different standards are required of plaintiffs who make discrimination claims in an ordinary discharge setting and plaintiffs who make them in a RIF or layoff setting. *Ryther v. KARE 11*, 108 F.3d 832, 836 n. 1 (8th Cir.1997) (en banc), *cert. denied*, —— U.S. ——, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997).

To establish a prima facie case of discrimination in the ordinary non-RIF context, plaintiff must prove that: 1) he was a member of a protected group; 2) he was qualified

**4.** Defendant Warner–Jenkinson Company, Inc. is referred to in this letter as a "wholly owned

subsidiary of Universal Foods Corporation ."

for his position; and 3) he was discharged under circumstances giving rise to an inference of discrimination. *Hanenburg v. Principal Mutual Life Ins. Co.,* 118 F.3d 570, 574 (8th Cir.1997) citing *Tidwell v. Meyer's Bakeries, Inc.,* 93 F.3d 490, 494 (8th Cir.1996) and *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1253 (8th Cir.1981).[5]

■ To establish a prima facie case of discrimination in the RIF context under Title VII, Section 1981, or the MHRA, plaintiff must: 1) show that he was a member of the protected class; 2) show that he met applicable job qualifications; 3) show that he was discharged; and 4) produce some additional evidence that a prohibited criterion such as age, race, or ethnic origin was a factor in his termination. *Herrero v. St. Louis University Hospital,* 109 F.3d 481, 483–84 (8th Cir. 1997). This "additional evidence" requirement is the key feature of the prima facie requirement in the RIF context. *See also Thomure v. Phillips Furniture Co.,* 30 F.3d 1020, 1024 (8th Cir.1994), *cert. denied* 513 U.S. 1191, 115 S.Ct. 1255, 131 L.Ed.2d 135 (1995) ("[RIF prima facie case] also requires a showing that age was a factor in the adverse employment action"); *Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 800 (8th Cir.1994)("[RIF plaintiff] must make an 'additional showing' that age was a factor in his termination"); *Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1165–66 (8th Cir.1985) ("[S]ome additional showing should be necessary to make a prima facie case in a reduction-in-force situation").

Plaintiff claims there are material inconsistencies in defendant's explanation of why plaintiff's employment with the company ended. The undersigned agrees. For purposes of the summary judgment motion, viewing the evidence in the light most favorable to plaintiff, the Court considers the plaintiff to have been fired, and he need not establish the "additional evidence" required in the RIF context.

Plaintiff testified in deposition that one day when he was working Al Schneider told him to go to see Ed Crumer; Crumer stated that plaintiff would no longer be working for the company and cited the reasons. These reasons were restated from a memorandum dated December 5, 1995 written to Crumer from Dan Lauff, the plant manager ("December 5, 1995 memorandum"). Pl. Mem., Lauff Deposition, Doc. No. 40 at 40; Pl. Mem., Crumer Deposition Exh. 6, Doc. No. 40. Plaintiff testified that Crumer told him these were the reasons that he was being fired, and that Crumer said it was not his decision but was done at the insistence of Dan Lauff. Young Deposition, Doc. No. 40, at 145–48. Lauff testified that plaintiff was fired, and that he, Lauff, wrote a memo to Ed Crumer recommending that plaintiff be fired. Pl. Mem., Lauff Deposition, Doc. No. 40, at 39–40. Lauff's memo states, "I believe Mr. Young's performance is not up to a caliber to be considered for permanent employment should a position arise and should therefore be released to pursue other career opportunities." Pl. Exh. 6, Doc. No. 40.

The specific reasons for termination were stated as follows:

* Mr. Young has missed 30.5 hours since reporting to the Dispersion area on 8/19/95. The most recent 8 hour occurrence was a result of a legal incarceration.

* Mr. Young was responsible for a significant product spill just last week that was a result of simple carelessness. The incident occurred when Robert took possession of a material mover while it was being used to elevate a tank and fill a drum. I believe this incident demonstrated a lack of attention to the job.

---

5. *But see Berg v. Bruce,* 112 F.3d 322, 327 (8th Cir.1997) ("(1) he was a member of the protected class; (2) at the time of discharge he was performing his job at a level that met his employer's legitimate expectations; (3) he was discharged; *and (4) following his discharge he was replaced by someone with comparable qualifications* ") (emphasis added); and *Kneibert v. Thomson Newspapers, Mich., Inc.,* 129 F.3d 444, 451–52 n. 4 (8th Cir.1997) (ADEA case) ("The four basic elements of a prima facie case are: (1) that the plaintiff is within a protected [class], (2) that the plaintiff met applicable job qualifications, (3) that despite these qualifications, the plaintiff was ... discharged, *and (4) that the employer did not take such action against nonmembers of the protected class.*") (emphasis added) *citing Williams v. Valentec Kisco, Inc.,* 964 F.2d 723, 726, n. 2 (8th Cir.1992), *cert. denied,* 506 U.S. 1014, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992).

756

\* Mr. Young has not worked well with the experienced and very qualified full time Grade 3 operator that he was assigned to work with.

*Id.* Plaintiff has produced evidence to show that the grounds articulated in this memorandum may be erroneous.

Plaintiff has produced a copy of a subpoena (Pl. Exh. 4, Doc. No. 40, Crumer deposition at 159) ordering him to appear as a witness in a civil case on November 29, 1995. This court appearance, plaintiff argues, is what defendant erroneously refers to in the December 5, 1995 memorandum as "legal incarceration." Ed Crumer testified in deposition that this was an error, not brought to his attention, and would not qualify as absenteeism. Pl. Mem., Doc. No. 40, Crumer Deposition at 69. Al Schneider received the memo and forwarded it, but the record before the Court is incomplete and does not indicate to whom. Pl. Mem., Doc. No. 40, Schneider Deposition at 27. The mistake in wording is significant, because of the obvious negative connotations of arrest and imprisonment as contrasted to the simple obedience to a judicial command. If Dan Lauff, who wrote the original memorandum, was aware of the subpoena, the self-evident distinction between incarceration and appearance as a witness could cast a "suspicion of mendacity" upon him. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). However, there is no evidence that Lauff was aware of the subpoena, and in the absence of such evidence, this cannot be fairly said to be more than a factual error.

Ed Crumer testified that product spills were grounds for discipline including termination; normal procedure dictated that an employee be warned before being dismissed; that this applied to full-time employees and that temporary employees should be told of the procedure. He further testified that the spill in question involving plaintiff was "fairly insignificant." Crumer Deposition, Document No. 40, at 78–79. Al Schneider testi-

fied that "[t]he spill was insignificant." In answer to the query "you would have told [Dan Lauff] it was an insignificant spill" Schneider responded "yes." He made no recommendation that plaintiff be fired, for this reason or otherwise. Schneider deposition, Doc. No. 40, at 31.

Ed Crumer testified that Dan Lauff and Al Schneider told him that plaintiff had trouble getting along with Curtis Wooden. Crumer Deposition, Doc. No. 40, at 80. Curtis Wooden testified that he never reported any such disagreement, and agreed that he and plaintiff basically worked well together.[6] Gooden Deposition, Doc. No. 40, at 23.

In a letter dated January 12, 1996 to the Missouri Commission on Human Rights, Mr. Foell of the Universal Foods Corporation legal staff flatly denied that plaintiff was fired. He stated: "[plaintiff's] termination was a permanent layoff for lack of work. It was so reported to the Missouri Office of Unemployment Compensation and unemployment compensation is being paid to him on an uncontested basis because it was a layoff due to lack of work." The explanation for plaintiff's "layoff" was given as the closing of "an extensive construction plan," and an assertion was made that "[w]e are in the process of terminating all of the temporary employees and Mr. Young is only one of approximately 20 such terminations which will occur over the next few months as the construction totally winds down." Mr. Foell went on to state that Ed Crumer advised plaintiff of his termination due to lack of work, and "did ... mention that there were problems that had occurred.... [f]actually, however, he was not terminated as a result of any of those items. They simply were issues that had been discussed with him." Pl. Exh. 1, M. Smith Deposition, Doc. No. 40. These "items" were described thusly: "... a very substantial spill of chemicals.... a substantial number of hours of work missed in a short period of time and ... difficulties in his relation with a fellow African American named Curtis Gooden." *Id.* Plaintiff contends that the language "very substantial

---

**6.** The record is not complete on one aspect: the redacted version of the deposition refers to a disagreement (apparently not reported by Gooden) but does not show with whom. However, plaintiff's counsel asks: "Other than the one disagreement did you feel that you and sob basically worked well together?" To which Gooden replied, "I would say yes, sir."

spill" is an exaggeration of both the actual incident and the original language of the December 5, 1995 memorandum.

Ed Crumer testified in March 1997 that "about a year ago" he was advised at a meeting that a corporate decision was made to bring the employment of temporary workers to an end, and replace them with independent contractors, "[b]ecause it was going to cause problems with beneficial [sic] and with our 401k plan... Crumer Deposition, Doc. No. 40 at 31. Later, when asked if plaintiff had been fired, he said no. *Id.*, at 48. He testified that plaintiff was "released" due to "lack of work" for plaintiff to do. *Id.* He further testified that he attended a conference "on our temporary employees [and] we were to either move them to a contract or either get rid of our temps." Def. Mot., Doc. No. 37C at 82.

Crumer also testified in deposition that a computerized record is kept in his office of personnel whose employment with the plant has ended, and the reason they left. One type of entry is "temp assignment ended." Pl. Mem., Crumer Deposition, Doc. No. 40 at 107–8. This indicates the employee was let go for lack of work. *Id.* Plaintiff's record does not indicate this, but rather indicates that he was discharged. Crumer refused to state directly that this code signifies that the person was fired, but did say that it was erroneously attached to plaintiff's name. *Id.*, at 109–10. *See* Pl. Mem., Crumer Deposition Exh. 10, Doc. No. 40.

When plaintiff left defendant's employment, he applied elsewhere and stated in his application that he had been fired. Pl. Mem., Young Deposition, Doc. No. 40 at 146. In a "to whom it may concern" letter dated November 28, 1995, Jim Huck, manager of the maintenance department stated plaintiff was diligent, conscientious, and performed to the best of his ability. Pl. Mem., Crumer Deposition, Exh. 5, Doc. No. 40. In February 1996, Ed Crumer signed a questionnaire from plaintiff's subsequent prospective employer, apparently writing his answers, and stating that plaintiff's quality of work had been "excellent," that he got along with others "very well," that his strong points included "attendance," and that he had no particu-

lar weak points, that he was laid off and that Crumer would (apparently hypothetically) re-hire him. Pl. Mem., David & Sons App. Response, Doc. No. 40.

Clearly, there are contradictions in defendant's explanations for plaintiff's discharge. The December 5, 1995 memorandum was written by the plant manager to the manager of human resources, recommending that plaintiff be fired. Pl. Exh. 6, Doc. No. 40. The plant manager was asked in deposition if plaintiff had been fired. He answered, "Correct." Pl. Mem., Lauff Deposition, Doc. No. 40 at 39. The manager of human resources (and recipient of the firing memo) was asked in deposition if plaintiff had been fired. He answered, "No." Def. Mot., Doc. No. 37(C) at 48. He went further, testifying that he told plaintiff at the discharge meeting that plaintiff was being let go for "lack of work." Plaintiff testified that such a statement was never made to him, only that he was being fired pursuant to the December 5, 1995 memorandum. Pl. Mem., Young Deposition, Doc. No. 40 at 146.

The memorandum itself appears to be factually erroneous, as to the hours missed, the significance of the product spill, and the difficulties between the two employees. It also appears to violate defendant's discharge guidelines if they were to have been applied to this temporary employee.

In addition, it is apparent that defendant's personnel records indicate plaintiff was listed as having been fired, not released upon completion of temporary employment. And items in the memorandum notwithstanding, plaintiff's later recommendations from defendant indicated that he had been an excellent employee, with specific contradictions to the material in the memorandum.

## II.

The burden of establishing a prima facie case of disparate treatment is not onerous. *Kehoe v. Anheuser–Busch, Inc.,* 96 F.3d 1095, 1105, n. 13 (8th Cir.1996), quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207, (1981). In a case such as this, evidence of instances of disparate treatment

can support a claim of pretext, but plaintiff has the burden of proving that he and the disparately treated employees (not members of a protected class) were similarly situated in all relevant respects. *Harvey v. Anheuser–Busch*, 38 F.3d 968, 972 (8th Cir.1994); *Jones v. Frank*, 973 F.2d 673, 676 (8th Cir. 1992). "Employees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways." *Harvey* at 972. This is a rigorous test. *Id.* "To be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of comparable seriousness." *Id.*

At oral argument, plaintiff acknowledged that he had no evidence to show that similarly situated (i.e., temporary, in same or similar position and history with defendant) white, non-disabled employees had committed the same alleged infractions but had been more leniently treated than he was. By the same token, defendant acknowledged that there was no evidence to show that plaintiff had been equally treated. The burden remains ultimately on plaintiff, however, and he has provided no basis to conclude that he was disparately treated in his discharge.

Plaintiff points to evidence that defendant had rigid guidelines for warnings to be issued prior to dismissal for reasons such as those cited in the December 5, 1995 memorandum. Pl. Mem., Doc. No. 40, at 4. However, while those guidelines clearly applied to regular employees, they were not clearly applicable to temporary employees. Plaintiff argues that defendant's previous human resources manager, Andrew Hollimon, advised him that these applied to temporary employees. Pl. Mem., Doc. No. 40 at 4.[7] Beyond this, there is no evidence that defendant bound itself to extend this benefit to plaintiff. Ed Crumer testified that while these guidelines applied to full-time employees, he said only that "[t]emporary employees should be told about this situation." Pl. Mem., Doc. No. 40, Crumer Deposition at 79. Dan Lauff, the plant manager, testified that "[o]nly permanent employees are subject to the progressive discipline policies," and that "a temporary employee would not go through the

progressive policy" and that a temporary employee could be "released on the spot." Def. Mot., Doc. No. 37(D) at 37.

Plaintiff was a temporary employee, without a contract and thus, ultimately terminable at will. Pl. Mem., Doc. No. 40, at 2–3; Def. Mot., Doc. No. 37, at 2–3. In Missouri, such an arrangement does not require an employer to have a good reason, or any reason, in order to discharge an employee. *Walker v. Modern Realty of Missouri, Inc.*, 675 F.2d 1002 (8th Cir.1982). Plaintiff testified that when he was hired he understood his position to be temporary and would probably last six months. Def. Mot., Doc. 37(A), Young Deposition at 40.

Assuming that plaintiff has made a prima facie case of discriminatory failure to hire and wrongful discharge, defendant may articulate a legitimate, nondiscriminatory reason for the adverse employment action(s). Defendant has done so, although the articulated reasons are not consistent. "Evidence discrediting an employer's nondiscriminatory explanation is not necessarily sufficient ... plaintiff cannot prevail unless the factfinder ... believe[s] the plaintiff's explanation of intentional discrimination." *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1336 (8th Cir.1996) (internal citations and quotes omitted). "The burden of persuasion as to the ultimate issue of intentional discrimination remains with the plaintiff at all times and ... this burden is not necessarily satisfied merely by discrediting the employer's explanation." *Id.*

In at least a partial acknowledgment of the limited evidence, plaintiff contends that the *McDonnell Douglas* analysis must not be rigidly applied, and cites for support to a number of cases from the Seventh Circuit. Pl. Mem., Doc. No. 40, at 15.

The Eighth Circuit has emphasized that this three-step process is a means to the end of deciding whether or not an employer illegally discriminated. *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir.1996). In *Shannon*, and *Winbush v. Glenwood State Hospital*, 66 F.3d 1471, 1480 (8th Cir.1995),

7. No deposition of Hollimon is in the record before the Court.

the facts required an analysis of defendant's claim that there was no proof of rejection (and thus no prima facie case) because plaintiffs had made no actual job application. Evidence proved, however, that plaintiffs had been discouraged or forbidden from making applications and all parties knew no applications would have been accepted. In such a case, the *McDonnell Douglas* framework would not be rigidly applied, because it would work to frustrate its own purpose. That is a wholly different matter than plaintiff's apparent suggestion that the framework's requirements should be modified· to accommodate weak evidence from which there is no reasonable inference of illegal discrimination.

Plaintiff suggests that *Kobrin v. University of Minnesota,* 34· F.3d 698, 702–03 (8th Cir.1994) (*Kobrin* I) authorizes the trier of fact to infer intentional discrimination if defendant's explanation of events is "rejected." Pl. Mem., Doc. No. 40, at 15–16. *Kobrin* does state that "[T]he plaintiff may prevail if she shows that the employer's articulated reason is a pretext *for discrimination.*" *Kobrin I,* at 702–03 (emphasis added). In any event, *Kobrin* 's language, like that of *Gaworski v. ITT Commercial Fin. Corp.,* 17 F.3d 1104, 1109 (8th Cir.1994) (reh'g denied), *cert. denied,* 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994) was reconciled by the Eighth Circuit in *Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328, 1336 (8th Cir. 1996), to clearly establish that showing pretext alone is not enough.

■ Plaintiff argues that to survive summary judgment, he need only provide (after establishing a prima facie case) "[I]ndirect evidence that defendant's explanation is not credible." Pl. Mem., Doc. No. 40, at 16. That is not a correct expression of the current law of the Eighth Circuit. *See, e.g., St. Marys' Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)

(*Hicks* III), and *Hicks v. St. Mary's Honor Center,* 90 F.3d 285 (8th Cir.1996) (*Hicks* VI). This· year, the Eighth Circuit clearly articulated en banc that "[t]his is not to say that, for the plaintiff to succeed, simply proving pretext is necessarily enough. We emphasize that evidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable inference of ... discrimination." *Ryther v. KARE 11,* 108 F.3d 832 (8th Cir.1997) (en banc), *cert. denied,* —— U.S. ——, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997).

[Plaintiff] argues that to survive [the] motion for summary judgment, it is enough that he created factual disputes with respect to whether [defendant's] proffered reasons were pretextual; he insists that he did not have to take the additional step of showing, either directly or indirectly, that his· termination was motivated by age-based animus. [He] essentially argues that, once he establishes a prima facie case and presents evidence that [defendant's] proffered reasons for discharging him were pretextual, his case can withstand a summary judgment motion and is entitled to go to trial. We disagree. Under the Supreme Court s decision in *St. Mary's Honor Center v. Hicks,* the ruling of the District Court must be upheld.

*Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328,· 1333 (8th Cir.1996). *See also* Julie Tang and Hon. Theodore M. McMillian, *Eighth Circuit Employment Discrimination Law: Hicks and Its Impact on Summary Judgment,* 41 St. Louis U.L.J. 519, 528 (1997):

On the other hand, the 'suspicion of mendacity' [8] language arguably supports a more flexible standard—one which would permit the courts, in some instances, to grant summary judgment for the defendant where the truthfulness or credibility of the defendant's proffered explanation *is*

---

**8.** This refers to *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) *may,* together with the elements of the prima facie case, suffice to show intentional discrimination") (Scalia, J.) (emphasis added). Ms.

Tang and Judge McMillian refer to this "strategically placed 'may' " as one source of confusion (among many) but assert that it reveals the central teaching of *Hicks,* i.e., that it is not required but merely possible—and then only with sufficient evidence of illegal discrimination—for plaintiff to go to a jury on the basis of a prima facie case plus defendant's pretextual rationale.

a matter of genuine dispute, but the ultimate issue of intentional discrimination is deemed not to be genuinely controverted. This is the view adopted by the Eighth Circuit.

(Emphasis in original).

Plaintiff's arguments rest, at bottom, on the contention that defendant did not treat him fairly, gave erroneous reasons for his firing, and willfully misrepresented the fact of his discharge. Under the law of this Circuit, none of these contentions, even if true, are enough without more to support an inference of illegal discrimination.

 The employment discrimination statutes are not meant to transform "at will" employment into perpetual employment where equal treatment is guaranteed to all employees and termination is legal only "for cause." *Hill v. St. Louis University*, 123 F.3d 1114, 1120 (8th Cir.1997). The statutes serve a narrow purpose and do not prohibit employment decisions based on poor job performance, erroneous evaluations, or unsound business practices. *Id.* (emphasis added).

Although Title VII tolerates no discrimination whether subtle or otherwise, this circuit has also acknowledged that employers have wide latitude to make business decisions. "[A]n employer has the right to . . . assign work, to change an employee's duties, to refuse to assign a particular job, and to discharge—for good reason, bad reason, or no reason at all, absent intentional . . . discrimination." *Walker v. AT & T Phone Ctr., Inc.*, 995 F.2d 846, 849–50 (8th Cir.1993); *Neufeld v. Searle Laboratories*, 884 F.2d 335, 340 (8th Cir.1989) (recognizing that "courts have no business telling [companies] how to make personnel decisions, which may be objectively or subjectively based"); *Smith v. Monsanto Chem. Co.*, 770 F.2d 719, 723 n. 3 (8th Cir.1985) (recognizing that an employer may develop arbitrary, ridiculous and even irrational policies as long as they are applied in a nondiscriminatory manner), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986). Furthermore, the Supreme Court has stated that "the fact that

a court may think that the employer misjudged the qualifications of the applicants does not in itself expose [the employer] to Title VII liability. . . ." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 259, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

*McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511–12 (8th Cir.1995).

At oral argument, plaintiff directed the Court's attention to the Eighth Circuit case of *Miners v. Cargill Communications, Inc.*, 113 F.3d 820 (8th Cir.1997), *cert. denied*, ─ U.S. ──, 118 S.Ct. 441, 139 L.Ed.2d 378 (1997), contending that it supports the argument that plaintiff has established an inference of disability discrimination. *Miners*, an ADA case, is distinguishable from the factual situation *sub judice.* In *Miners*, plaintiff was subjected to an ultimatum by her employer to enroll in alcohol rehabilitation or be fired (based upon almost no evidence of alcoholism). Nevertheless, this proved that her employer considered her to have a disability; and when she resisted she was fired. Her employer then denied that she was fired because of her "alcoholism", but rather because she drank alcohol at an official function while assigned a company car, against policy. *Miners* at 822. The district court apparently did not rule on the existence of plaintiff's prima facie case, but entered summary judgment for defendant, finding insufficient evidence to support an inference of an ADA violation. The Court of Appeals reversed, finding 1) that plaintiff had made a prima facie case, and 2) that plaintiff's evidence allowed a reasonable jury to conclude that defendant's explanation was a "pretext for unlawful discrimination." *Miners* at 825. *Miners* provided actual evidence that she was fired for no other reason than her boss thought she was an alcoholic. That, if true, is a violation of the ADA. Thus, *Miners* provided evidence strong enough to infer not pretext alone, but pretext for actually violating the ADA. Even if she may have established this in the creation of her prima facie case, that is merely an illustration of the "double duty" evidence doctrine.[9] Plaintiff Robert

9. That is to say, where the facts are such that

they serve to establish both the prima facie re-

Young has provided no such evidence from which to infer that defendant violated the ADA or any other employment discrimination law, regardless of his establishment of a prima facie case.

Plaintiff argues that the reasoning of *Perdomo v. Browner,* 67 F.3d 140, 145 (7th Cir.1995) should apply. Pl. Mem., Doc. No. 40, at 16. There the Seventh Circuit ruled that summary judgment is precluded when there is evidence calling into question the truthfulness of defendant's explanation. *Perdomo* (factually distinguishable from the case at bar), appears to be consistent with the rulings of the Seventh Circuit, and for that matter with most of the other Circuits (*see, e.g., Aka v. Washington Hospital Center,* 116 F.3d 876, 881–884 (D.C.Cir.1997) (citing cases)); and in the case at bar there is evidence calling into question the truthfulness of defendant's explanation. However, *Perdomo* is not consistent with the law of the Eighth Circuit, and is not the law in this case. *See Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328, 1337 (8th Cir.1996), *cert. denied,* 117 S.Ct. 2510 (1997).

Indeed, the law of this Circuit holds that it is possible for an employer to proffer a "legitimate" reason for a discharge that is factually incorrect, and still not violate the anti-discrimination laws. In a reversal of a jury verdict, the Eighth Circuit recently declared:

> [W]e are confident that the jury easily might have found that ... [defendant]'s proffered 'legitimate reason' was a fabrication, a pretext for its true reasons. We are so persuaded ourselves. But ... we do not believe [plaintiff] has met her burden of proving that the pretext was intended to conceal unlawful discrimination or that her gender in any way motivated the hiring...

*Brandt v. Shop 'n Save Warehouse Foods, Inc.,* 108 F.3d 935 (8th Cir.1997) (reh'g denied). As a matter of law, when, as in this case, there is no evidence from which to infer a violation of the specific employment dis-

crimination prohibitions, the case may go no further.

Therefore, defendant's motion for summary judgment will be sustained on all counts of race and disability discrimination. The Court declines to exercise its supplemental jurisdiction over plaintiff's state law claim of retaliation for filing a state worker's compensation claim. 28 U.S.C. § 1367(c)(3). That count is dismissed without prejudice. An appropriate order is issued herewith.

### *ORDER*

**IT IS HEREBY ORDERED** that the motion of defendant for summary judgment (Doc. No. 37) is sustained. The counts of discrimination alleged in plaintiff's second amended complaint for violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.,* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.;* 42 U.S.C. § 1981; and the Missouri Human Rights Act ("MHRA"), Mo.Rev.Stat. § 213.010 *et seq.,* are dismissed with prejudice. The count of violation of Mo.Rev.Stat. § 287.780, retaliation for filing a worker's compensation claim is dismissed without prejudice.

**IT IS FURTHER ORDERED** that defendant's motion for attorney's fees to be paid by plaintiff is denied, and defendant's motions in limine (Doc. No. 50) are denied as moot.

---

quirements and the inference of illegal discrimination. Whether or not this happens depends on the facts of each case. *See Rothmeier,* 85 F.3d at 1336–37; *Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 801 (8th Cir.1994); Julie Tang and Hon. Theodore M. McMillian, *Eighth Circuit Employment Discrimination Law: Hicks and Its Impact on Summary Judgment,* 41 St. Louis U.L.J. 519, 529, n. 56